EDWARD S. RYAN, Appellant-Respondent, *v.* BROOKLYN EYE AND EAR HOSPITAL et al., Respondents, and LEON J. DAVIS et al., Appellants.

Second Department, November 18, 1974.

*Kalsmith & Jacobowitz (John F. X. Masterson* and *Daniel Weiss* of counsel), for appellant-respondent.

*Sipser, Weinstock, Harper & Dorn (Richard L. Dorn* of counsel), for appellants.

*Simpson Thacher & Bartlett (Martin H. Zuckerman* of counsel), for Brooklyn Eye and Ear Hospital and others, respondents.

*Stanley D. Applebaum* for Herbert J. Fisch and others, respondents.

Christ, J. In this action to recover damages for malicious and intentional interference with economic relations, the issue is whether the complaint states a valid cause of action as to each of the defendants.

The plaintiff is a physician who has practiced anesthesiology exclusively since 1947. Defendant Associated Physicians is a partnership of doctors founded by defendant Herbert J. Fisch. At a time prior to 1962, Fisch and defendant Brooklyn Eye and Ear Hospital entered into a relationship whereby Fisch, an independent contractor, agreed to supply the hospital with a staff of anesthesiologists sufficient for the hospital's needs. This he does through Associated Physicians. There is no written contract between Fisch and the hospital and their agreement is at will.

In 1962, the plaintiff became a member of Associated Physicians and, after being approved by the appropriate authorities at the hospital, he was accredited as a practicing anesthesiologist at the hospital.

In August of 1971, defendant Local 1199 Drug and Hospital Union brought a grievance alleging that the plaintiff had racially slurred a hospital employee. Although this matter was resolved, it appears that a second similar alleged incident resulted in a threat by the union to strike unless the plaintiff's association at the hospital were discontinued. The hospital thereupon informed Fisch that the plaintiff could no longer utilize its facilities.

The plaintiff then commenced this action, alleging, *inter alia,* that the defendants tortiously and maliciously interfered with his relationship with Fisch and the hospital. Upon motion by the hospital and those of its officials who are named as defendants, the Special Term dismissed the complaint as against them, for failure to state a cause of action. A similar motion by Fisch and Associated Physicians was granted. However, an identical motion by the union and its officials was denied. The

plaintiff appeals from the two orders of dismissal and the union and its officials appeal from the order denying their motion.

The development of tort doctrine relating to business and financial interests has been attended by burgeoning growth in the last few decades. This is perhaps best explained by reference to the history of these torts. In Roman law, the head of the household, or *paterfamilias,* was entitled to bring an action for violence committed upon members of his household. When the law grew to enable members of a household to bring actions for themselves, there remained the right of the *paterfamilias* to bring a separate action for the wrong done to him through injury to his household members. The English common law recognized a similar right of action for injury done to one's servants.

In 1349, the Statute of Labourers (23 Edw. III) created a remedy for enticing another's servants. The statutory action enabled recovery to be had under circumstances different from those giving rise to the common-law right. Proof of violence by the defendant was not a requisite and there was no need to prove a binding contract. (For a thorough analysis of this history and for a collection of the authorities, see Sayre, Inducing Breach of Contract, 36 Harv. L. Rev. 663.)

By virtue of decisional law, the common-law and statutory causes of action lost their distinctions, so that by the end of the 18th century the courts were allowing an action at common law for enticement of another's servant, without requiring proof of violence. Then, in 1853, *Lumley* v. *Gye* (2 El. & Bl. [Eng.] 216) gave voice to the doctrine allowing recovery for inducement to breach a contract. The defendant there had enticed a well-known opera singer to refuse to perform an engagement for the plaintiff. In rejecting the demurrer to the complaint, Justice CROMPTON stated (p. 231): "I think that we are justified in applying the principle of the action for enticing away servants to a case where the defendant *maliciously procures* a party, who is under a valid contract to give her exclusive personal services to the plaintiff for a specified period, to refuse to give such services *during the period for which she had so contracted,* whereby the plaintiff was injured."

It was not until 30 years later that the doctrine of *Lumley* v. *Gye* was accepted fully (*Bowen* v. *Hall,* 6 Q. B. D. 333). It was then slowly developed, first to cover contracts other than those for personal services and later to include interferences in which no ill will was found on the part of the defendant (*Temperton*

v. *Russell* [1893], 1 Q. B. 715; *South Wales Miners' Federation* v. *Glamorgan Coal Co.* [1905], A. C. 239).

The American courts were reluctant to accept the doctrine in the beginning, but most cases which rejected the *Lumley* v. *Gye* holding have long been overruled. The New York experience is typical. The early cases denied any right of action unless the contract were one for personal services (*Ashley* v. *Dixon,* 48 N. Y. 430; *Curran* v. *Galen,* 152 N. Y. 33). Later, recovery still was denied, but the emphasis was shifted to the defendant's " justification " instead of the plaintiff's failure to state a cause of action (*National Protective Assn. of Steam Fitters and Helpers* v. *Cumming,* 170 N. Y. 315; *Roseneau* v. *Empire Circuit Co.,* 131 App. Div. 429). Still later, the earlier cases were overruled and recovery was permitted (*Posner Co.* v. *Jackson,* 223 N. Y. 325; *Lamb* v. *Cheney & Son,* 227 N. Y. 418; *Gonzales* v. *Kentucky Der. y Co.,* 197 App. Div. 277, affd. *sub nom. Gonzales* v. *Reichenth 'er,* 233 N. Y. 607). Finally, intentional interference with contract, in the absence of privilege, was declared actionable without reservation (*Campbell* v. *Gates,* 236 N. Y. 457). Recovery for interference with economic relations which were not necessarily protected by contract also developed at the same time.

As the law of tortious interference with economic relations grew, it became apparent that some of the decisions were not based on sound logic (for an example, see Note, Torts: Inducement to Breach of Contract: Doctrine of Lumley v. Gye, 9 Cornell L. Q. 352). Analysis of the various elements comprising the tort has been lacking, particularly with regard to the question of malice (Sayre, Inducing Breach of Contract, 36 Harv. L. Rev. 663; Carpenter, Interference with Contract Relations, 41 Harv. L. Rev. 728).

Even though the specific parameters of the tort may not be as clearly defined as those areas of the law which enjoyed less erratic development, there are still some very distinct limitations as defined by the basic nature of the action. As with many forms of action, inducement to breach and intentional interference with economic relations developed to fill an interstitial void in remedial jurisprudence. They were not meant as a substitute for an already existing cause of action. Thus, if one has an action for breach of contract, he should not also have a cause of action for inducement to breach against the same defendant. The plaintiff claims to have a contract with Fisch and Associated Physicians. Yet he asserts no facts justifying his claim against these two defendants. More to the point, they cannot

be guilty of inducing the breach of their own contract. Furthermore, the complaint makes no showing as to how Fisch or Associated Physicians had anything to do with the plaintiff's inability to perform at the hospital.

It is clear from the papers before us that neither Fisch nor Associated Physicians was capable of contracting with the plaintiff so as to give him the right to practice at the hospital. Whatever right the plaintiff may have had at the hospital was a right which could only be conferred by the hospital. Therefore, if there were a contract that was breached wrongfully, then the plaintiff's cause of action is for breach against the hospital. The plaintiff may not assert a cause against the hospital for inducing the breach of a contract right which could only have come from the hospital in the first place. Thus, the complaint was properly dismissed as against the hospital and its employees.

However, with respect to the union, the complaint states a valid cause of action. The union's argument that no contract exists ignores the existence of the intentional tort of interference with contractual relationships. " 'An injury to a person's business by procuring others not to deal with him, or by getting away his customers, if unlawful means are employed, such as fraud or intimidation, or if done without justifiable cause, is an actionable wrong' " (2 Cooley, Torts, § 230, as quoted by Finch, J. in *Keviczky* v. *Lorber,* 290 N. Y. 297, 306). The union's contention that malice must be shown where the contract is one at will is defeated by the fact that the plaintiff alleges that, despite repeated efforts on his part, the union refused to present him with its charges against him and refused to meet with him to effect a settlement of the dispute. This same allegation also serves to defeat the union's contention that its motion to dismiss the complaint should be treated as a motion for summary judgment. The union has not rebutted this allegation and a material question of fact exists as to whether the union was unjustifiably responsible for the plaintiff's inability to practice at the hospital. If the allegation is supported by an evidentiary showing, a jury could reasonably find that the union's failure to hear the plaintiff's side of the story rendered malicious the ensuing demand for his removal.

Accordingly, the three orders should be affirmed, with $20 costs and disbursements to plaintiff against appellants Davis, Wecker and Local 1199 Drug and Hospital Union, AFL-CIO and with $20 costs and disbursements to defendants Dressler, Formica and Brooklyn Eye and Ear Hospital against plaintiff.

CoHALAN, Acting P. J., BRENNAN, BENJAMIN and MUNDER, JJ., concur.

Three orders of the Supreme Court, Kings County, dated September 11, 1973, September 14, 1973 and January 2, 1974, respectively, affirmed, with $20 costs and disbursements to plaintiff against appellants Davis, Wecker and Local 1199 Drug and Hospital Union, AFL-CIO and with $20 costs and disbursements to defendants Dressler, Formica and Brooklyn Eye and Ear Hospital against plaintiff.