CHARLES W. APPLEY & another[1] vs. BARRY M. LOCKE &
another.[2]

Suffolk.   September 13, 1985. — January 16, 1986.

Present: HENNESSEY, C.J., ABRAMS, NOLAN, & O'CONNOR, JJ.

*Unlawful Interference. Contract,* Employment. *Public Officer. Jurisdiction,*
To try title to public office. *Governor. Massachusetts Bay Transportation
Authority.*

In an action by two former employees challenging the legality of their
   dismissal from employment with the Massachusetts Bay Transportation
   Authority the authority could not be held liable to the plaintiffs on the
   theory of tortious interference with their employment relationships.
   [543]
The principle that title to a public office cannot be attacked collaterally did
   not bar two former employees of the Massachusetts Bay Transportation
   Authority from challenging the legality of their dismissal by a person
   temporarily exercising under gubernatorial designation the powers of
   chief executive officer of the authority during a vacancy in that position,
   where any attack on that person's title to office would be direct, and
   not collateral, in nature. [544-546]
Although lacking express statutory authorization for doing so, the Governor,
   with the approval of the board of directors of the Massachusetts Bay
   Transportation Authority, had inherent power to designate a person to
   exercise the powers of chief executive officer of the authority during a
   vacancy in that position, pending the Governor's appointment, pursuant
   to G. L. c. 161A, § 6, as appearing in St. 1973, c. 1140, § 10, of a
   new chairman and chief executive officer. [546-547]
A person designated by the Governor, with the approval of the board of
   directors of the Massachusetts Bay Transportation Authority, to exercise
   the powers of chief executive officer of the authority during a vacancy
   in that position had the power, vested in the chief executive officer by
   the board's regulations, to dismiss employees of the authority. [547-548]

CIVIL ACTION commenced in the Superior Court Department
on April 7, 1983.

[1] Joseph P. Shea.

[2] Massachusetts Bay Transportation Authority.

The case was heard by *James J. Nixon, J.*, on a motion for summary judgment.

The Supreme Judicial Court granted a request for direct appellate review.

*Edward A. Gottlieb* for the plaintiffs.

*Richard L. Neumeier* for Massachusetts Bay Transportation Authority.

*John J. Coffey* for Barry M. Locke.

O'CONNOR, J. On June 10, 1980, the defendant Locke, purporting to act as interim chairman and chief executive officer of the defendant Massachusetts Bay Transportation Authority (MBTA), terminated the employment of the plaintiffs Appley and Shea as executive assistant and administrative assistant, respectively, to the MBTA chairman and chief executive officer. Challenging Locke's authority to terminate their employment, the plaintiffs have brought this action to recover for alleged tortious interference with their contract and advantageous economic relations with the MBTA.[3] We reject the defendants' argument, adopted by the judge below, that the plaintiffs' action constitutes an impermissible attack on Locke's title to a public office. We hold, however, that although Locke had not been appointed MBTA chairman and chief executive officer in accordance with G. L. c. 161A, § 6, as appearing in St. 1973, c. 1140, § 10, he was nevertheless authorized to discharge the plaintiffs. Therefore, we affirm the judgment entered in the Superior Court dismissing the plaintiffs' complaint against both defendants.

"The MBTA is a 'body politic and corporate and a political subdivision of the commonwealth' consisting of '[t]he territory within and the inhabitants of' seventy-eight municipalities of greater Boston and any other city or town contiguous to the area of the seventy-eight municipalities which has voted to join the MBTA. G. L. c. 161A, §§ 2, 16." *Maynard* v. *Massachusetts Bay Transp. Auth.*, 391 Mass. 654, 655 (1984). At all relevant times, G. L. c. 161A, § 6, provided for manage-

---

[3] The plaintiffs also seek a declaratory judgment pursuant to G. L. c. 231A (1984 ed.). Since resolution of the plaintiffs' tort claims disposes of all the issues before the court, declaratory judgment is inappropriate.

ment of the MBTA by a board of five directors appointed by the Governor. Chapter 161A, § 6, also provided that there shall be a chairman of the board of directors, that the chairman shall be the MBTA's full-time executive officer,[4] and that the chairman "shall be appointed by the governor with the approval of the advisory board." The advisory board, to which reference is made in § 6, consists of "the city manager in the case of a Plan D or E city or the mayor of each other city, and the chairman of the board of selectmen of each town, constituting the authority." G. L. c. 161A, § 7 (1984 ed.).

On June 9, 1980, Robert Foster resigned as chairman and chief executive officer of the MBTA, and Edward J. King, then the Governor, purported to appoint Locke as interim chairman and chief executive officer to serve until the Governor might appoint a "permanent successor . . . approved by the Advisory Board." The appointment of Locke as interim chairman did not have advisory board approval. On June 10, 1980, the MBTA board of directors voted to approve Locke's appointment as interim chairman and purported to authorize him to exercise on behalf of the board of directors all the powers incident to the statutory office of chairman and chief executive officer. Among the powers vested in that office by the regulations of the board were the following: "The Chairman shall, at his pleasure, and subject to these Regulations or any applicable provisions of the Authority's approved budget, appoint and remove, employ and discharge, and transfer and promote all officers, employees and agents of the Authority . . . ." Regulations of the Board of Directors of the MBTA § 2 (B) (1975). On June 10, 1980, Locke discharged the plaintiffs, informing them by letter that their discharges were due to a reorganization of the chief executive's staff. The plaintiffs then brought this action.

---

[4] The sentence "[t]he director appointed as chairman shall be the chief executive officer of the authority and shall devote full time to the management of the authority," has been deleted from G. L. c. 161A, § 6, and the number of directors has been increased from five to seven by St. 1980, c. 581, § 3, approved December 7, 1980, effective by act of Governor, December 8, 1980. Unless otherwise noted, all references to § 6 will be to the version appearing in St. 1973, c. 1140, § 10 — the effective provision at the times pertinent to this case.

The defendants moved for summary judgment and the plaintiffs moved for partial summary judgment as to liability under Mass. R. Civ. P. 56, 365 Mass. 824 (1974). Essentially reasoning that the plaintiffs' action necessarily involved a collateral attack on Locke's right to exercise the powers of a public office — that of chairman and chief executive officer of the MBTA — and that under the law of this Commonwealth such an attack is not permitted, a judge of the Superior Court allowed the defendants' motions and denied that of the plaintiffs, and a judgment dismissing the plaintiffs' complaint against both defendants was entered. The plaintiffs appealed to the Appeals Court, and we granted the parties' joint application for direct appellate review.

The MBTA cannot be liable for claimed tortious interference with the employment relationships between itself and its employees, the plaintiffs, *Gram* v. *Liberty Mut. Ins. Co.,* 384 Mass. 659, 663 n.3 (1981); *Vigoda* v. *Barton,* 338 Mass. 302, 304 (1959); see *Riseman* v. *Orion Research Inc.,* 394 Mass. 311, 314 (1985), and the complaint sets forth no other basis for relief against the MBTA that is argued on appeal. Therefore, the judge correctly ordered summary judgment in favor of the MBTA.

In order to be entitled to damages from Locke, the plaintiffs must show that Locke intentionally and without legal justification caused the termination of the plaintiffs' employment by the MBTA. *Grammenos* v. *Zolotas,* 356 Mass. 594, 597 (1970). *Owen* v. *Williams,* 322 Mass. 356, 360 (1948). *Steranko* v. *Inforex, Inc.,* 5 Mass. App. Ct. 253, 272-273 (1977). It is undisputed that the plaintiffs' employment was terminable at will and that Locke intentionally discharged the plaintiffs. The issue is whether Locke was authorized to do so. If, given the facts we have set forth, Locke was authorized to discharge the plaintiffs, the plaintiffs have no claim against Locke for which relief may be granted, and the plaintiffs' tort claims against him were rightly dismissed. However, if Locke lacked authority to fire the plaintiffs, they are entitled to partial summary judgment against him as to liability.

The judge concluded that the plaintiffs' claims that Locke was not authorized to discharge them constituted a collateral attack on Locke's title to the office to which he was "appointed," and that such an attack is impermissible. If the judge was correct, the plaintiffs cannot prove their case. We have held in numerous cases that the title to public office cannot be attacked collaterally. See, e.g., *Commonwealth* v. *Loretta,* 386 Mass. 794, 797-798 (1982); *Boston Edison Co.* v. *Boston Redevelopment Auth.,* 374 Mass. 37, 74 (1977); *Hill* v. *Trustees of Glenwood Cemetery,* 323 Mass. 388, 393 (1948); *Brierley* v. *Walsh,* 299 Mass. 292, 295 (1938); *Commonwealth* v. *DiStasio,* 297 Mass. 347, 350-352, cert. denied, 302 U.S. 683, and 302 U.S. 759 (1937). But this case does not involve a collateral attack on Locke's title to the office of chairman and chief executive officer of the MBTA.

First, it is not clear that the plaintiffs are really challenging Locke's title to the office of chairman and chief executive officer. The Governor did not purport to appoint Locke to that office, nor did the MBTA board of directors purport to ratify such an appointment. Furthermore, Locke did not claim to hold the statutory office of chairman and chief executive officer.[5] Reasonably interpreted, the Governor's action purported to be no more than a designation of Locke temporarily to assume the duties and exercise the powers normally exercised by a permanent chairman appointed pursuant to G. L. c. 161A, § 6, and the board of directors purported only to ratify that action and to authorize Locke to exercise those powers temporarily.

Secondly, even if the plaintiffs' claims are seen as an attack on Locke's title to public office, the attack is direct, not collateral, and therefore it is not barred by the principle enunciated in the cases cited above. The attacks in those cases were deemed to be collateral because the plaintiffs were simply attempting to avoid the legal consequences of official actions taken by de

---

[5] By letter dated October 17, 1980, the Attorney General requested Locke to confirm that he did not purport to hold the office of chairman and chief executive officer under G. L. c. 161A, § 6. Locke responded in writing that he did not purport to hold that office.

facto public officers. Unlike the plaintiffs here, the plaintiffs in those cases were not seeking damages from persons who claimed justification for their interference with the aggrieved parties' person or property by virtue of their public office.

The distinction between an impermissible collateral attack and a permissible direct attack may be illustrated by a comparison of such cases as *Commonwealth* v. *Loretta, supra,* and *Boston Edison Co.* v. *Boston Redevelopment Auth., supra,* in which the attacks were deemed collateral, with the case of *Short* v. *Symmes,* 150 Mass. 298, 299-300 (1889), in which the attack was considered direct. In *Commonwealth* v. *Loretta, supra,* the defendant, who had been sentenced by a judge serving pursuant to the so-called recall statute, G. L. c. 32, § 65G (1984 ed.), sought to raise the issue of the legality of his confinement in prison by challenging the right of the sentencing judge to function as a judge. In *Boston Edison Co.* v. *Boston Redevelopment Auth., supra,* the plaintiff sought to raise the issue of the defendant Authority's approval of the construction of a plant for generating electricity as an urban renewal project by challenging the voting rights of several de facto members of the defendant Authority. We held in those cases that the challenges to the de facto officers' right to function in public office were collateral only and were therefore prohibited. In *Short* v. *Symmes, supra,* however, we held that, "[i]f one who has assumed to interfere with the person or property of another is sued therefor, and attempts to justify his act on the ground that it was properly done by him as a public officer, it is for him to show, not merely that he was an officer *de facto,* but that he was duly and legally qualified to act as such officer." As we noted in that case, *id.* at 300, the court had intimated the same principle in dicta in earlier cases. See, e.g., *Sheehan's Case,* 122 Mass. 445, 446 (1877) ("Upon well settled principles, it would be inconsistent with the convenience and security of the public, and with a due regard to the rights of one acting in an official capacity under the color of, and a belief in, lawful authority to do so, that the validity of his acts as a justice should be disputed, or the legal effect of his election and qualification as a representative

be determined, in this proceeding to which he is not a party. The appropriate form of trying his right to exercise the office of a justice is by information in behalf of the Commonwealth, *or perhaps by action against him by the person injured"* [emphasis added]); *Fowler* v. *Bebee,* 9 Mass. 231, 234 (1812) ("If an action should be commenced against one claiming to be sheriff, for an act which he does not justify, but as sheriff . . . the legality of his commission might come in question, and meet a regular decision"). See also *Lawrence* v. *Commissioners of Pub. Works,* 318 Mass. 520, 529-530 (1945) (Field, C.J., dissenting) ("The present case is not to be confused with cases where the title of an officer to his office is directly involved, such as an information in the nature of quo warranto to oust him from the office . . . , an action for salary or fees . . . , or an action of tort for interference with the person or property of another justifiable only because done by a public officer" [citations omitted]). The plaintiffs in this case claim that Locke has tortiously interfered with their contract and advantageous economic relations with the MBTA, and Locke's defense is that his conduct was justified because he was carrying out his responsibilities as a public officer. The present action is governed by *Short* v. *Symmes, supra.* We conclude that the plaintiffs are not barred from challenging Locke's authority to fire them, and we turn to the substantive issue.

At the time of Locke's appointment, G. L. c. 161A, § 6, required that the Governor's appointment of a chairman and chief executive officer of the MBTA receive the majority approval of the advisory board, consisting of the representatives of at least seventy-eight member municipalities. A potential, if not inevitable result of this requirement is the elapse of an appreciable interval of time between the resignation of such an officer and the appointment of a new officer in compliance with the statute. Although there was no express statutory authorization for the appointment or designation of a person to function as interim chief executive officer pending a permanent appointment, it is clear that the MBTA cannot function for any significant period without the day to day leadership of a person with the powers of a chief executive officer. Therefore,

it is reasonable to conclude that the interim designation of such a person by the Governor with the approval of the MBTA board of directors carries out the intent of the Legislature in enacting G. L. c. 161A.

The MBTA is a "body politic . . . and a political subdivision of the commonwealth." G. L. c. 161A, § 2 (1984 ed.). The MBTA is within the Executive Office of Transportation and Construction. G. L. c. 6A, § 19 (1984 ed.). The Governor had the power to appoint the permanent MBTA chairman and chief executive officer with advisory board approval. G. L. c. 161A, § 6. We have previously recognized that the Governor has inherent executive powers with respect to the MBTA. *Massachusetts Bay Transp. Auth. Advisory Bd.* v. *Massachusetts Bay Transp. Auth.*, 382 Mass. 569, 578 (1981). The Governor's selection and designation of someone to exercise the powers of chief executive officer of the MBTA, an agency providing essential transportation services, pending a statutory appointment, was an appropriate exercise of executive powers.

The MBTA is not only a political body but it is also a "body . . . corporate," G. L. c. 161A, § 2. Therefore, like a private corporation, it possesses "such powers as have been expressly conferred upon it together with such powers as may be implied, or are incidental or auxiliary to the powers expressly granted, or are reasonably necessary in order to enable it to carry out the object for which it was organized." *Pilgrim Real Estate, Inc.* v. *Superintendent of Police of Boston,* 330 Mass. 250, 251 (1953). Even in the absence of an enabling statute or by-law, among the inherent powers of a corporation is the power "to appoint directors and such other officers as may be deemed necessary for the management of its affairs. Such power need not be expressly conferred, but will be implied." 2 W. Fletcher, Private Corporations § 283 (rev. perm. ed. 1982).

Because the Governor designated Locke as interim chairman and chief executive officer and the board of directors ratified that action, we need not decide whether appointment by the Governor without the approval of the board, or designation of

Locke by the board without action having been taken by the Governor, would have been effective to confer temporarily on Locke the powers of chairman and chief executive officer. Clearly, the Governor and the board together had the requisite power. We conclude, therefore, that on June 10, 1980, one day after the office of chief executive officer had become vacant, the defendant Locke had the authority to exercise the powers of that office including the power, vested in the office by board regulation, to discharge employees. We reject the plaintiffs' argument that G. L. c. 161A, § 3 (*d*), as amended by St. 1973, c. 1140, §§ 3 & 4, granting the board the authority "[t]o appoint and employ officers, agents and employees to serve at the pleasure of the directors," precluded delegation of the power to fire employees to either a temporary or permanent chief executive officer. The Legislature could not reasonably have intended that no MBTA employee could be discharged in the absence of a vote of the board of directors.

*Judgment affirmed.*