508 So.2d 237 (1987)
Linda HICKMAN
v.
WINSTON COUNTY HOSPITAL BOARD, a Corporation, et al.
85-893.
Supreme Court of Alabama.
May 22, 1987.
Jackie O. Isom, Hamilton, for appellant.
Walter Joe James, Jr., of James & Lowe, Haleyville, for appellees.
*238 TORBERT, Chief Justice.
This appeal involves the tort of intentional interference with business or contractual relations. Linda Hickman, the plaintiff below, appeals from the trial court's granting of a directed verdict in favor of the defendants at the close of the plaintiff's evidence. The only issue involved in this appeal is whether the plaintiff made out a prima facie case of intentional interference with business or contractual relations.
As this Court stated in Rose v. Miller & Co., 432 So.2d 1237, 1239 (Ala.1983):
"In considering the propriety of a directed verdict, our function is to view the evidence in a light most favorable to the non-moving party. If, by any interpretation, it can support a conclusion in favor of the non-moving party, we must reverse. Herston v. Whitesell, 374 So.2d 267 (Ala.1979). A directed verdict is proper only where there is a complete absence of proof on an issue material to the cause of action or where there are no controverted issues of material fact upon which reasonable persons could differ. Caterpillar Tractor Co. v. Ford, 406 So.2d 854 (Ala.1981)."
Our recent decision in Gross v. Lowder Realty Better Homes & Gardens, 494 So.2d 590 (Ala.1986), outlined the tort of intentional interference with business or contractual relations. The elements required to make a prima facie case of this tort were clearly enumerated in Lowder Realty, Inc. v. Odom, 495 So.2d 23, 25 (Ala.1986):
"(1) The existence of a contract or business relation; (2) defendant's knowledge of the contract or business relation; (3) intentional interference by the defendant with the contract or business relation; and (4) damage to the plaintiff as a result of defendant's interference. However, defendant has an opportunity to prove justification as an affirmative defense to plaintiff's claim."
In Alcazar Amusement Co. v. Mudd & Colley Amusement Co., 204 Ala. 509, 513, 86 So. 209, 212 (1920), this Court said, "A third party who, with knowledge of the existence of a valid contract between others, interferes with its performance ... commits a tort...." (Emphasis added.) We have not addressed directly whether an employer can be liable for tortious interference with the contract he has with his employee. The Supreme Court of South Carolina, in Ross v. Life Ins. Co. of Virginia, 273 S.C. 764, 765, 259 S.E.2d 814, 815 (1979) (discussing an employer-employee relationship), clearly stated:
"Moreover, the South Carolina cases recognizing a cause of action for tortious interference with a contract have been limited to situations where an action was brought against third persons rather than parties to the contract. See, e.g., Smith v. Citizens & Southern National Bank of S.C., 241 S.C. 285, 128 S.E.2d 112 (1962); Keels v. Powell, 207 S.C. 97, 34 S.E.2d 482 (1945). We decline to extend the doctrine in this case. Ryan v. Brooklyn Eye and Ear Hospital, et al., 46 A.D.2d 87, 360 N.Y.S.2d 912 (1974); Prosser, The Law of Torts, 934 (4th Ed. 1971)."
Other authorities agree that an employer cannot be liable for tortious interference with its own contract with its employee. Rao v. Rao, 718 F.2d 219 (7th Cir. 1983); Martin v. Platt, 179 Ind.App. 688, 386 N.E.2d 1026 (1979); Appley v. Locke, 396 Mass. 540, 487 N.E.2d 501 (1986); Gram v. Liberty Mut. Ins. Co., 384 Mass. 659, 429 N.E.2d 21 (1981); Hein v. Chrysler Corp., 45 Wash.2d 586, 277 P.2d 708 (1954). "The defendant's breach of his own contract with the plaintiff is of course not a basis for the tort." Prosser and Keeton, The Law of Torts, § 129, at 990 (5th ed. 1984). Breach of contract does not give rise to an action for the tort of intentional interference with business or contractual relations. See Hudson v. Venture Industries, Inc., 147 Ga.App. 31, 33, 248 S.E.2d 9, 11 (1978), affirmed, 243 Ga. 116, 252 S.E.2d 606 (1979). Indeed, the very nature of this tort precludes its application to a party to the contract. Therefore, the trial court did not err when it directed a verdict in favor of Hickman's employer, defendant Winston County Hospital Board.
*239 Nonetheless, corporate officers or employees may individually commit the tort of intentional interference with business or contractual relations to which their corporation or employer is a party. See Nottingham v. Wrigley, 221 Ga. 386, 144 S.E.2d 749 (1965) (corporate officers in their personal capacities held liable for procuring the termination of plaintiff's employment with their corporation). However, courts have held that this tort cannot be maintained against officers or employees of a corporation unless those persons were acting outside their scope of employment and were acting with actual malice. Swager v. Couri, 77 Ill.2d 173, 32 Ill.Dec. 540, 395 N.E.2d 921 (1979); Martin v. Platt, supra; Gram v. Liberty Mut. Ins. Co., supra; Nola v. Merollis Chevrolet Kansas City, Inc., 537 S.W.2d 627 (Mo.Ct. App.1976). As the Supreme Court of Illinois put it, "[T]o be tortious, a corporate officer's inducement of his corporation's breach of contract must be done `without justification or maliciously.'" Swager, 77 Ill.2d at 190, 32 Ill.Dec. at 546, 395 N.E.2d at 927.
The Supreme Judicial Court of Massachusetts has explained "malice" in the context of this tort:
"Because Gosselin and Fisher were acting within the scope of their employment responsibilities, Gram acknowledges that each was privileged to act as he did unless he acted out of malevolence, that is, with `actual' malice.... The rule assigning liability to corporate officials only when their actions are motivated by actual, and not merely implied, malice has particular force because `their freedom of action directed toward corporate purposes should not be curtailed by fear of personal liability.'
"....
"Malice may be shown by the proof of facts from which a reasonable inference of malice may be drawn. The line between a proper inference and unwarranted conjecture is not easily drawn. The answer depends on the evidence in each case and on what the trier of fact may reasonably infer from that evidence." Gram, 384 Mass. at 663-64, 429 N.E.2d at 24.
The Supreme Court of Oregon in Wampler v. Palmerton, 250 Or. 65, 76-77, 439 P.2d 601, 607 (1968), stated:
"So long as the officer or employe acts within the general range of his authority intending to benefit the corporation, the law identifies his actions with the corporation. In such a situation the officer is not liable for interfering with a contract of the corporation any more than the corporation could be liable in tort for interfering with it."
Therefore, the trial court was correct when it held that defendants James Kenneth Reed, associate administrator of Burdick-West Hospital, and Truby Jack, Hickman's supervisor, were not liable as agents of the Hospital Board.
Defendants Reed and Jack could still be held individually liable for intentional interference with Hickman's business or contractual relations with the hospital if Hickman proved a prima facie case. There still remains the question of whether the burden is on the plaintiff in order to make out a prima facie case to show that the employee defendants were not operating within the scope of their authority or whether the defendants must assert as a defense that they were acting within the scope of their authority. The Supreme Court of Oregon has stated:
"The interest protected by the interference with contract action is the interest of the plaintiff in not having his contract rights interfered with by intermeddling strangers. However, so long as the person inducing the breach of a corporate contract is an officer or employe acting for the benefit of the corporation and within the scope of his authority, the plaintiff cannot show that this interest was invaded and therefore cannot maintain an interference with contract action."
Wampler, 250 Or. at 77, 439 P.2d at 607. Although the Supreme Court of Oregon has never explicitly addressed the question of where this burden should lie, the above quotation indicates that the plaintiff's tort *240 action depends upon a showing by the plaintiff that the defendant officer or employee was acting outside the scope of his authority.
Other courts have placed the burden upon the plaintiff to show that the defendant was acting outside the scope of his authority.
"In light of these policies, Illinois law requiresto state a cause of action against corporate officers for interfering with their corporate principal's contractthe allegation of facts which, if true, establish that the officers induced the breach to further their personal goals or to injure the other party to the contract, and acted contrary to the best interest of the corporation."
George A. Fuller Co. v. Chicago Col. of Ost. Med., 719 F.2d 1326, 1333 (7th Cir. 1983) (emphasis in original).
In Worrick v. Flora, 133 Ill.App.2d 755, 272 N.E.2d 708 (1971), the Appellate Court of Illinois, Third District, put the burden on the plaintiff to show that the defendant officer was "acting other than in accord with his usual and customary duties in behalf of the corporation." 133 Ill.App.2d at 758, 272 N.E.2d at 711. "It is our conclusion that so long as a fellow employee is acting in accord with the interest of the employer no personal liability can devolve upon him." 133 Ill.App.2d at 759, 272 N.E.2d at 711.
We must look at the evidence in the light most favorable to the plaintiff in order to see if she produced at least a scintilla of evidence of each of the elements of this tort as to defendants Reed and Jack.
Plaintiff produced evidence that she was employed by the Winston County Hospital Board at Burdick-West Hospital as a supply clerk and floor supervisor. Testimony indicated that defendant Reed promoted defendant Jack, a trainee of Hickman's, to supervisor of the supply department despite Hickman's far greater seniority. Hickman testified that Reed said that Hickman did not get the job because she turned it down when it was offered to her; she denies having ever been offered the job and testified that Reed admitted to the hospital administrator that she had never been offered the job. There was evidence that Jack changed the inventory system and did not tell Hickman of the changes and that Jack told another employee not to tell Hickman about those changes.
There was testimony that Hickman's file contained unfavorable write-ups about certain incidents while another employee similarly involved in those incidents did not have unfavorable write-ups in her file. One witness said that when she was hired by the hospital, Reed and Jack told her not to listen to Hickman, even though Hickman was in charge of her training. This same witness stated that she received a raise due to the confusion between Jack and Hickman and that Reed told her not to say anything about the raise. Hickman stated that she told Jack that the only holidays she wanted not to work on were Christmas and New Year's Day and that Reed and Jack then drew up a three-year schedule requiring Hickman to work Christmas and New Year's Day one year and New Year's Day the next.
Hickman testified that the difficulties between her and Reed and Jack caused her to become nervous and gave her high blood pressure and a rapid heartbeat. She stated that she had to be hospitalized for her nervous condition, that she had to quit her job at the hospital, and that she has not been able to find another job since that time. She also stated that she had lost some insurance coverage.
A document from the State of Alabama Department of Industrial Relations Unemployment Compensation Agency shows that an appeals referee found that Hickman was entitled to unemployment benefits even though she voluntarily left her job because she had been subjected to "unequal treatment from her supervisors to the extent that it was causing the claimant health problems."
After examining all of the evidence that the plaintiff presented, we are of the opinion that there was no evidence that Reed and Jack were acting outside the scope of their authority. Therefore, we affirm the *241 trial court's granting of a directed verdict in favor of all the defendants.
AFFIRMED.
MADDOX, HOUSTON and STEAGALL, JJ., concur.
SHORES and ADAMS, JJ., concur specially.
JONES, ALMON and BEATTY, JJ., dissent.
ADAMS, Justice (concurring specially).
I agree with the result reached by the Court in acknowledging the existence of the tort of interference with contractual relations where a third person interferes with a contract between employer and employee. However, this opinion should not be interpreted as expanding or limiting our previous decisions in Gross v. Lowder Realty Better Homes & Gardens, 494 So.2d 590 (Ala.1986), and Lowder Realty, Inc. v. Odum, 495 So.2d 23 (Ala.1986), which enumerated the elements required to establish a prima facie case of interference with contractual or business relations. In interpreting the impact of the newly defined tort in the employee-employer context, we do require that the plaintiff show malice, whereas in the ordinary case only intentional conduct is required. Furthermore, in order to show malice the plaintiff must make a strong showing of a pattern of interference. This is more than an isolated incident of the officer or employee's acting outside his scope of employment. To establish a prima facie case of this kind, the plaintiff must meet the four requirements enumerated in the Lowder Realty, cases, supra, and must show that the defendants acted outside their scope of employment and did so maliciously.
Finally, if the plaintiff prevails, the judgment is against the officers and employees individually, inasmuch as they must have acted outside the scope of their employment. The facts herein simply do not establish the tort of interference with contractual relations. Therefore, the trial judge properly directed a verdict for the defendants.
SHORES, J., concurs.
BEATTY, Justice (dissenting).
I must dissent from the result reached by the majority in this case. While I agree with the statement of the law applicable in this case, I must, however, disagree with the majority's application of that law to these facts.
The plaintiff appeals from a verdict directed for the defendants granted at the close of plaintiff's evidence. Thus, on review, we must decide the elements of plaintiff's prima facie case for the intentional interference with contractual or business relations, and then, viewing the evidence, and all reasonable inferences arising therefrom, in the light most favorable to the plaintiff, we must determine whether she has adduced at least a scintilla of evidence as to each of those elements. Thomaston v. Thomaston, 468 So.2d 116 (Ala.1985).
The majority concludes that the plaintiff failed to adduce any evidence whatsoever establishing that the defendants were acting outside the scope of their authority in treating the plaintiff in the manner in which she claims (and they apparently concede) they did. The majority apparently overlooks the fact that, in their brief on appeal to this Court, the defendants adopt the statement of the facts of this case as set out in the plaintiff's brief. Without question, those facts and all the reasonable inferences therefrom, to which defendants, in effect, stipulate, provide more than a scintilla of evidence that the defendants' actions in this case were outside the scope of their authority. To illustrate, I quote at length from the plaintiff's statement of facts:

"As Plaintiff-Appellant would do her work, Defendant-Appellee Jack would go behind her to change it to make it appear that Plaintiff-Appellant was doing it wrong and that Defendant-Appellee Jack was doing it right.... Defendant-Appellee Jack jumped up and started hollering and screaming at Plaintiff-Appellant that she would do as she pleased *242 and Plaintiff-Appellant would have to go along with it. Apparently, Defendant-Appellee Reed had heard Defendant-Appellee Jack screaming and hollering at Plaintiff-Appellant.... At a meeting with Administrator Hill, Plaintiff-Appellant and her Husband, Defendant-Appellee Reed admitted that Plaintiff-Appellant had never been offered the position of Central Supply Supervisor or even knew of the position, contrary to what he had previously claimed.... Defendant-Appellee Jack changed the whole supply inventory system and told Employee Kathy Reeves Garrison not to tell Plaintiff-Appellant about the change.... Plaintiff-Appellant had to resign due to health problems caused by the harassment and interference of Defendants-Appellees Reed and Jack.... Defendant-Appellee Jack willfully deceived and lied regarding the incidents about Plaintiff-Appellant. Defendant-Appellee Jack ordered Plaintiff-Appellant to be on a certain floor at 7:00 a.m. but also knew she couldn't start work without the Admission Cards from the Admitting Office at another location. Defendant-Appellee Jack wrote up Plaintiff-Appellant knowing she was following her [Jack's] order.... The main Administrator of the Hospital was aware of the interference with Plaintiff-Appellant's work.... Administrator Hill told Plaintiff-Appellant that Associate Administrator and Defendant-Appellee Reed had been to the Board of Directors of the Hospital asking for his job and that was the reason that he did not intervene on Plaintiff-Appellant's behalf...." (Emphasis added.)
Even the majority would have to agree that, based on these facts, it would be more than reasonable to infer that, in sabotaging the plaintiff's work, and then subsequently lying and harassing plaintiff about her work performance, the defendants were acting outside their respective scopes of authority as an administrator and a supervisor. Moreover, surely if a criminal defendant can be held on appeal to have stipulated to the propriety of a facially improper and irregular grand jury proceeding (see Ex parte Hayes, 507 So.2d 995 (Ala.1987), then a civil defendant can also stipulate to facts which constitute plaintiff's prima facie case.
For these reasons, I would reverse the judgment below based on the verdict directed in favor of the defendants and remand the case for further proceedings.
JONES and ALMON, JJ., concur.