[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1070 
This case involves claims by Randall A. Goff against his employer, Michelin Tire Corporation ("Michelin"), and his supervisor, Ron Morgan, related to the termination of Goff's employment by Michelin.
With respect to Goff's claim against Michelin, the trial court determined, as a matter of law, that an employee handbook issued by Michelin constituted a unilateral contract of employment between Michelin and Goff. The trial court therefore submitted to a jury Goff's claim that Michelin breached this contract when it terminated Goff's employment, and the jury returned a verdict in favor of Goff and against Michelin in the amount of $78,905. The trial court entered a judgment against Michelin based on the jury's verdict. Michelin appeals from that judgment.
At the close of Goff's case-in-chief, the trial court "dismissed" a claim by Goff against Morgan alleging that Morgan, who was Goff's supervisor at Michelin, intentionally interfered with Goff's employment relationship when he reported to Michelin that Goff was sleeping on the job. After the trial, however, the trial court granted Goff's motion for a new trial with respect to this intentional-interference claim. Morgan appeals from that order.
Goff's complaint alleged that he and Michelin had entered into an "employment contract of indefinite duration" in 1978, pursuant to which Goff began to work for Michelin as an electrician in South Carolina. More specifically, Goff averred that in 1978 Michelin provided him with a copy of an employee handbook (the "1978 handbook") that, according to the complaint, "promised that employees would be discharged only for good cause, and only in accordance with discharge procedures set out in the manual" and that he continued to work for Michelin in reliance on those alleged promises.
In 1984, Goff was transferred by Michelin to a facility located in Dothan, Alabama. Several versions of the employee handbook were published after the 1978 handbook; these subsequent versions were provided to Goff at various times both before and after his transfer to Alabama.[1]
Michelin *Page 1071 
terminated Goff's employment in May 1993.
According to Goff, Morgan had falsely reported to Michelin that Goff had been sleeping on the job. In his complaint, Goff contended that Michelin had thereafter breached its employment agreement with him by wrongfully discharging him from employment and that Michelin should be estopped from denying the enforceability of its alleged promises to him regarding his employment. Goff also alleged that Morgan's action constituted intentional interference with his employment relationship with Michelin, intentional infliction of emotion distress, and defamation. Goff's complaint against Michelin and Morgan sought damages for, among other things, lost earnings of $40,000 and expenses related to seeking other employment.
In March 1994, after having previously filed an answer to Goff's complaint, Michelin and Morgan jointly filed a motion for a summary judgment as to all of Goff's claims. In support of their motion, Michelin and Morgan filed an affidavit from Morgan, excerpts from Goff's deposition testimony, and certain exhibits to Goff's deposition testimony, including a copy of the Michelin employee handbook that was in effect at the time of Goff's termination in 1993 (the "1993 handbook").
Goff filed a "motion" in opposition to the motion for a summary judgment; he supported his motion with an affidavit that stated, in pertinent part:
 "I was recruited for employment by Michelin Tire Corporation beginning on or about December, 1977 and was employed beginning January 23, 1978. During the recruitment period, it was explained to me by agents of Michelin that I would be offered a position at Michelin with a beginning salary of $5.76, and that my employment would be probationary for a period of ninety days, during which time I could be discharged for any reason. It was further explained that after successful completion of the probationary period, I would become a regular employee of Michelin with full benefits, including a set of policies and procedures to be followed by both myself and the company in dealing with infractions that might subject me to dismissal for reasons set out in the employee manuals, and to deal with grievances which I might have. Based upon these representations and the policies and procedures outlined in the employee manuals distributed to the employees at that time, I accepted employment with Michelin and continued that employment for approximately fifteen years."
Among other things, Goff also filed an uncertified copy of an employment agreement that was apparently executed by Goff and a Michelin representative. The employment agreement was on Michelin's letterhead, was dated January 10, 1978, and stated in its entirety:
 "Michelin Tire Corporation is pleased to extend to you an offer of employment which will become effective on January 23, 1978 at an hourly rate of $5.76. The first ninety (90) days of employment will be considered as a probationary period.
 "This offer is contingent upon the successful completion of a physical examination by one of our designated medical doctors."
In June 1994, the trial court entered a summary judgment in favor of Morgan as to Goff's claims against Morgan for intentional infliction of emotional distress and defamation, but denied Michelin and Morgan's motion for a summary judgment as to all other claims.[2] *Page 1072 
The trial court held a pretrial conference in March 1995 and ordered the parties to submit briefs as to certain issues related to Michelin's employee handbook. In response, Michelin and Morgan filed a brief arguing that the trial court, rather than the jury, should determine whether Michelin's employee handbook constituted a contract; that, based upon the language of the 1993 handbook, the court should determine that Michelin's employee handbook was not a contract; and that the 1993 handbook was the only version of Michelin's employee handbook that was relevant to Goff's claims. Goff filed a brief arguing that the issue of whether the employee handbook constituted a contract between Goff and Michelin should be submitted to the jury for determination.[3] Michelin and Morgan filed a response to Goff's brief, contesting Goff's arguments and seeking a summary judgment in their favor.
On May 5, 1995, the trial court issued an order that stated, in part:
 "The Court has considered the briefs and arguments of [Goff] and [Michelin]. The Court has also considered the [1993 handbook] in effect at the time of [Goff's] dismissal. The Court finds that the [1993 handbook] constituted a contract of employment between [Goff] and [Michelin], where no employee would be discharged without just cause. The company further provided a grievance procedure to be followed.
". . . .
 "Accordingly, the [1993 handbook] is the only relevant handbook in this cause and there exists a genuine issue of matter of fact as to whether [Michelin] breached said contract.
 "Therefore, Summary Judgment [for Michelin] is hereby denied."
(Emphasis added.)
In May 1996, the trial court issued an order that purported to certify its May 5, 1995, order as a final order, pursuant to Rule 54(b), Ala.R.Civ.P. Michelin and Morgan appealed to the Alabama Supreme Court in June 1996, arguing that the trial court erred when it determined that the 1993 handbook constituted a contract between Michelin and Goff and that it also erred when it denied Michelin and Morgan's motion for a summary judgment. Goff cross-appealed, arguing that the determination of whether the employee handbook constituted a contract was a question of fact to be determined by a jury.[4] The Alabama Supreme Court transferred the appeals to this court, pursuant to Ala. Code 1975, § 12-2-7. We dismissed the appeal and the cross-appeal, without issuing an opinion.See Michelin Tire Corp. v. Goff, (No. 2951218, Aug. 13, *Page 1073 
1996) 690 So.2d 565 (Ala.Civ.App. 1996) (table).
The case was tried before a jury in November 2000. At the close of Goff's case-in-chief, Michelin and Morgan filed a motion for a judgment as a matter of law arguing that provisions contained in the 1993 handbook precluded a finding that the 1993 handbook was an employment contract. Michelin and Morgan argued, in the alternative, that, if the trial court nonetheless determined that the 1993 handbook was a contract, Michelin did not breach that contract when it terminated Goff for allegedly sleeping on the job. They also argued that Morgan could not be liable to Goff for intentional interference with an employment relationship between Goff and Michelin because, they argued, (1) Morgan was an agent of Michelin, (2) Morgan had acted within the scope of his employment when he reported that he had caught Goff sleeping on the job, and (3) Goff had not introduced substantial evidence indicating that Morgan had acted with malice.
After considering Michelin and Morgan's motion for a judgment as a matter of law made at the close of Goff's case-in-chief, the trial court stated: "I'm going to stand by my ruling that the [1993] Handbook constituted an implied contract. But I feel that Mr. Morgan, as a principal, . . . is a party in this case and he is an agent or employee. Therefore, I'm going to dismiss Mr. Morgan on the tortious interference [claim]."
At the end of the trial, Michelin again requested that the trial court enter a judgment as a matter of law in its favor. At that time, the trial court stated, "I'm going to . . . submit it to the jury. We have come this far. I'm going to give an instruction . . . as follows: That I have ruled that the [1993 handbook] is an implied contract, that an employee cannot be discharged without just cause." Goff's claims against Michelin were then submitted to the jury.
Michelin filed a postjudgment motion, requesting that the trial court enter a judgment as a matter of law in its favor or, in the alternative, that it grant Michelin a new trial. Goff also filed a postjudgment motion, arguing that the trial court erred when it dismissed Goff's claim against Morgan for intentional interference with his employment relationship with Michelin and requesting a new trial as to that claim. The trial court denied Michelin's post-judgment motion, but granted Goff's motion for a new trial. In the order denying Michelin's postjudgment motion, the trial court stated:
 "The evidence presented in this case showed that . . . Goff was first recruited by . . . Michelin . . . in South Carolina in 1977 and began work in January, 1978. At the time of his employment, Goff was issued an employee handbook which the Court determined as a matter of law contained language sufficient to constitute an offer of a unilateral contract of employment, which Goff accepted by becoming employed and remaining employed with Michelin for fifteen years. There was evidence presented that additional handbooks were issued by the company throughout Goff's employment, and the Court determined that the language of those handbooks was sufficient to constitute an amendment to the rules and regulations under which . . . [Michelin] and . . . [Goff] would conduct their responsibilities and obligations under the initial contract and that the latest handbook issued should control these responsibilities and obligations; however, the Court determined the issuance of these additional handbooks did not negate the employment contract nor change the employment relationship to at-will. *Page 1074 
 "The evidence at trial was sufficient to submit Goff's claims that Michelin breached the employment contract under the latest handbook to the jury.[5]"
Michelin and Morgan appealed to the Alabama Supreme Court. The case was transferred to this court, pursuant to § 12-2-7, Ala. Code 1975.
Michelin argues on appeal that the trial court erred when it denied Michelin's motion for a judgment as a matter of law and instead determined that the 1993 handbook constituted a contract between Michelin and Goff. Michelin argues that Goff was an employee at will whose employment could be terminated with or without cause, and that the trial court erred when it instructed the jury that Goff could not be terminated without "just cause." Michelin argues, in the alternative, that the jury's determination that Michelin breached its contract with Goff was not supported by substantial evidence because, Michelin says, it "presented overwhelming evidence of just cause to terminate Goff's employment."
"Whether the language of an employee handbook is sufficiently clear and specific to constitute an offer of a unilateral contract is a question of law to be determined by the court." Dykes v. Lane Trucking, Inc.,652 So.2d 248, 250 (Ala. 1994). See also Davis v. University ofMontevallo, 586 So.2d 27, 29 (Ala.Civ.App. 1991) ("`Although the ultimate determination . . . is a matter of law, the facts underlying that legal conclusion may be in dispute, thus requiring resolution by the factfinder.'" (Quoting Lassiter v. Covington, 861 F.2d 680, 684 (11th Cir. 1988)). "[O]n appeal, the ruling on a question of law carries no presumption of correctness, and this Court's review is de novo." Ex parteGraham, 702 So.2d 1215, 1221 (Ala. 1997).
As our Supreme Court has explained:
 "[T]he rule is well settled in Alabama that an employee contract at will may be terminated by either party with or without cause or justification. This means a good reason, a wrong reason, or no reason.
 "The cases reveal that three elements must be shown to establish that an employment contract is one other than one terminable at will: (1)that there was a clear and unequivocal offer of lifetime employment or employment of definite duration; (2) that the hiring agent had authority to bind the principal to a permanent employment contract; and (3) that the employee provided substantial consideration for the contract separate from the services to be rendered."
Hoffman-La Roche, Inc. v. Campbell, 512 So.2d 725, 728 (Ala. 1987) (citations omitted; final emphasis added). Thus, an "employment-at-will relationship can be modified by provisions in an employee handbook by which an employer promises not to discharge an employee except by specified procedures or for specified causes." Campisi v. ScolesCadillac, Inc., 611 So.2d 296, 298 (Ala. 1992).
 "[T]he language contained in a handbook can be sufficient to constitute an offer to create a binding unilateral contract. The existence of such a contract is determined by applying the following analysis *Page 1075 
to the facts of each case: First, the language contained in the handbook must be examined to see if it is specific enough to constitute an offer. Second, the offer must have been communicated to the employee by issuance of the handbook, or otherwise. Third, the employee must have accepted the offer by retaining employment after he has become generally aware of the offer. His actual performance supplies the necessary consideration."
Hoffman-La Roche, Inc., 512 So.2d at 735 (emphasis added).
The Alabama Supreme Court also stated in Hoffman-La Roche, Inc.:
 "Of course, to become a binding promise, the language used in the handbook must be specific enough to constitute an actual offer rather than a mere general statement of policy. However, whether a proposal is meant to be an offer for a unilateral contract is determined by the outward manifestations of the parties, rather than by their uncommunicated beliefs. . . . Indeed, if the employer does not wish the policies contained in an employee handbook to be construed as an offer for a unilateral contract, he is free to so state in the handbook. Thus, this Court has refused to hold the provisions of a handbook enforceable against an employer where the handbook at issue expressly stated the following:
 "`This Handbook and the policies contained herein do not in any way constitute, and should not be construed as a contract of employment between the employer and the employee, or a promise of employment.'"
512 So.2d at 734 (quoting McCluskey v. Unicare Health Facility, Inc.,484 So.2d 398, 400 (Ala. 1986)) (citations omitted); see also Bell v.South Central Bell, 564 So.2d 46, 48 (Ala. 1990) ("Whether the language in the handbook was intended to be an offer is determined by reference to the reasonable meaning of the parties' external and objective manifestations, rather than by their uncommunicated beliefs.").
The following language appears at the beginning of the 1993 handbook:
 "Welcome to Michelin. This handbook has been compiled to help you become better acquainted with the company of which you are an important member.
 "Some of the information you will be reading here will be used immediately on the job. Some you will use in planning your future. And, some you'll need for later reference.
". . . .
 "This handbook is not intended to be a rule book for employees, nor is it a complete statement of policies and practices. It is a brief look at Michelin today and a summary description of many Michelin employee programs."
(Emphasis added.)
The second page of the 1993 handbook contains a letter from Michelin's president that states, in pertinent part:
 "I am happy to present you with a copy of our employee handbook that has been specially designed for all Michelin U.S. employees to help you know your company better. It contains information which is important to your understanding of the company and how you fit in as a team member.
 "Please understand that not all situations can be covered nor every question answered in a handbook. This is not an employment contract. Michelin may change or revise policies and procedures from time to time. However, we can best work together and build an ever *Page 1076 
stronger company if we understand our common goals, policies and procedures."
(Emphasis added.)
The 1993 handbook also states, in pertinent part:
 "Your first three months with Michelin are considered a probationary period. . . . Upon successful completion of this period, you will be considered a regular employee of Michelin and become eligible for our full range of benefits. Of course, both during and after the Probationary Period you will be expected to meet the standards of performance so essential to successful teamwork.
". . . .
 "One of the responsibilities of every employee is to conduct themself [sic] in a reasonable, adult manner. These rules of conduct at Michelin are basic, common sense rules of behavior which govern on-the-job conduct and performance. Each rule, the violation of which can result in disciplinary action up to and including discharge, is listed below. Every employee is expected to know and abide by these rules. The list is not all inclusive. If you have questions, consult your supervisor."
The 1993 handbook then listed several rules, including sleeping on the job, the violation of which would subject an employee to discharge.
In actions like the present one, the Alabama Supreme Court has repeatedly upheld summary judgments for employers when an employee handbook contained a disclaimer stating that the handbook was not to be considered a contract, particularly where, as in this case, the handbook language also indicated that any listed reasons for which an employee might be dismissed were nonexclusive or that those reasons could be changed in the discretion of the employer. See, e.g., Campisi, 611 So.2d at 299-300; Clark v. America's First Credit Union, 585 So.2d 1367, 1369
(Ala. 1991); Stinson v. American Sterilizer Co., 570 So.2d 618, 621-22
(Ala. 1990); McCluskey v. Unicare Health Facility, Inc., 484 So.2d 398,400-01 (Ala. 1986).[6] Based upon the language contained in the 1993 handbook, we conclude that the trial court erred when it determined that the 1993 handbook established a unilateral contract between Michelin and Goff and when it submitted to the jury Goff's breach-of-contract claim against Michelin. Therefore, we need not address the remaining issues Michelin has raised on appeal.
We turn now to Morgan's appeal from the trial court's order granting Goff a new trial on his claim alleging intentional interference with an employment relationship. In that order, the trial court stated, in pertinent part: *Page 1077 
 "At the close of [Goff's] evidence in this case, [Michelin and Morgan] moved for judgment as a matter of law and the Court dismissed [Goff's] claims against . . . Morgan for intentional interference with Goff's employment relationship with Michelin, based upon its opinion that because Morgan was an employee of Michelin, the cause of action could not be maintained against him and, therefore, should not be submitted to the jury. Upon review of [Goff's] motion for new trial and the caselaw in Alabama, the Court determines it had misconstrued Alabama law in this regard and the issue should have been presented to the jury. Therefore, [Goff's] motion for new trial upon this issue is granted."
To be actionable, the tort of intentional interference with a business or contractual relation requires:
"(1) The existence of a contract or business relation;
 "(2) Defendant's knowledge of the contract or business relation;
 "(3) Intentional interference by the defendant with the contract or business relation;
 "(4) Absence of justification for the defendant's interference; and
 "(5) Damage to the plaintiff as a result of defendant's interference."
Gross v. Lowder Realty Better Homes Gardens, 494 So.2d 590, 597
(Ala. 1986) (footnote omitted). An employee who desires to maintain a suit against a coworker for intentional interference with the employee's employment contract must also "`show that the [coworker] acted outside [his or her] scope of employment and did so maliciously.'" Hanson v. NewTechnology, Inc., 594 So.2d 96, 103 (Ala. 1992) (quoting Hickman v.Winston County Hosp. Bd., 508 So.2d 237, 241 (Ala. 1987) (Adams, J., concurring specially)). Further, in order to show malice the plaintiff must "`make a strong showing of a pattern of interference.'" Perlman v.Shurett, 567 So.2d 1296, 1299 (Ala. 1990) (quoting Hickman, 508 So.2d at 241 (Adams, J., concurring specially)).
On appeal, Morgan first asserts that Goff and Michelin had "no contract or business relation" with which Morgan could interfere, because Goff's employment with Michelin was "at will." Morgan provides us with no legal authority for this assertion.[7] We therefore do not hold the trial court in error on this basis. See Rule 28(a)(10), Ala.R.App.P.
Morgan also argues that Goff failed to present substantial evidence that Morgan acted outside the scope of his employment when Goff's employment was terminated and that Goff failed to present substantial evidence that Morgan acted with malice.
Goff testified that he had filed a grievance with Michelin for discrimination in 1989 and that, at that time, Morgan had told Goff that if he "followed through with [the grievance] that it would end any opportunity to advance with Michelin in the future. That [Goff's] career would basically be over." Goff further testified that within a few weeks after he filed the grievance, he was moved from day shift to rotating shift and that Morgan participated in the decision to change Goff's shift. He stated that he had been working on the day shift for two and one-half years before *Page 1078 
the shift change and that the move to the rotating shift also required him to perform mechanical work for which he had not been adequately trained. Goff testified that Morgan knew of his job qualifications and his abilities with respect to mechanical work. Goff testified that his job approval reports suffered as a result of his new assignment.
Goff also testified that, after he filed the grievance, his relationship with Morgan quickly deteriorated and that Morgan requested that Goff be terminated on four separate occasions, the last one being the 1993 incident that resulted in Goff's termination. Goff also testified that Michelin had asked him to quit voluntarily after he had filed the grievance and that Michelin had offered him a severance package if he would quit.
Goff stated that, after he filed the grievance, Morgan harassed him on a daily basis and required him to work overtime without pay. He also testified that Morgan had filed a disciplinary report against him for insubordination when Goff had attempted to report Morgan's actions to Michelin's personnel department. Goff testified that Michelin dismissed Morgan's disciplinary report and told Morgan not to require Goff to work when Goff was not "on the clock." However, Goff stated that Morgan continued to treat him the same way that he had in the past.
Goff testified that on numerous occasions he requested that Michelin transfer him to another department so that he would not be under Morgan's supervision, but that his requests had been refused. Goff admitted that approximately one year before Michelin terminated his employment, he had been placed on a one-year probation for allegedly threatening another employee in a telephone conversation after work. Goff further testified that toward the end of his probationary year Morgan was "pushing" him at every opportunity, "He was relentless. He wouldn't let up at all."
As noted above, Michelin terminated Goff's employment in 1993 when Morgan allegedly caught Goff sleeping on the job. Goff denied that Morgan had found him sleeping on the job, though he admitted that his eyes were heavy and that his head may have "bobbed." We note that another Michelin employee testified that it was not uncommon for someone to "nod" when they worked on the night portion of the rotating shift and that "nodding" was not considered sleeping on the job.
Goff testified that at the time Morgan reported that he allegedly had been sleeping "on the job," Goff was taking one of the breaks Michelin permitted an employee to take and that he had been reading a magazine. Goff stated that at that time Morgan "basically . . . said I have got you now. You are gone. You are out of here. You won't get out of this one. . . . I'm going to fire you for sleeping. . . . [I]t's going to be my word against yours."
Although Morgan offered evidence that contradicted much of Goff's testimony, based upon our review of the record, we conclude that Goff offered substantial evidence indicating that Morgan had repeatedly attempted to have Goff's employment terminated and had fabricated reasons for Goff's termination on more than one occasion, including the 1993 incident that actually resulted in the termination of Goff's employment. That evidence, if believed, would support a finding that Morgan acted outside the scope of his employment and with malice when he requested that Goff be terminated in 1993. The trial court therefore did not err when it granted Goff's motion for a new trial as to his intentional-interference claim against Morgan. See generally, e.g.,Pegram v. Hebding, *Page 1079 667 So.2d 696, 701 (Ala. 1995) (holding that a trial court erred when it failed to submit to the jury an employee's claim for intentional interference with his employment contract and noting that "[a] directed verdict is proper only if the evidence and the inferences that can be drawn from that evidence must lead reasonable persons to only one conclusion").
Based on the foregoing, we reverse the trial court's judgment against Michelin, and we remand the cause for the trial court to enter a judgment in favor of Michelin. We affirm the trial court's order granting Goff a new trial as to his claim against Morgan for intentional interference with a business relation.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
YATES, P.J., and PITTMAN, J., concur.
THOMPSON, J., concurs in the result.
[1] One of those versions was published and provided to employees in or about 1988. It is unclear from the record whether the version of the handbook in effect in 1993, when Goff's employment was terminated, was this 1988 version or a subsequent version of the handbook.
[2] The trial court also ordered Michelin to produce a copy of the employee handbook it had originally issued to Goff and each subsequent edition of the handbook. Michelin thereafter produced copies of its employee handbooks that had been published in 1977, 1980, 1983, and 1988. However, only what is referred to herein as the 1993 handbook was put into evidence. See note 1, supra.
[3] Goff does not make this argument on appeal, and he has not conditionally cross-appealed from the trial court's determination that it, rather than the jury, should have made the decision as to whether the employee handbook constituted a contract between Goff and Michelin.
[4] There is some indication in the record that in his previous appeal Goff argued that the determination of whether the employment handbook was a contract and the question of who should make that determination were governed by South Carolina law and that South Carolina law would favor him on both issues. Goff does not make these arguments in the current appeal and, as noted above, no cross-appeal has been filed in connection with the current appeal; Goff does not contend in this appeal that the jury should have been allowed to decide whether the employee handbook constituted a contract of employment.
[5] Although Goff argues that the 1978 handbook was the version of the handbook that was relevant to his claims, no evidence was introduced at trial as to the terms of the 1978 handbook. Further, the Alabama Supreme Court has stated that "absent an admission by the defendant of the existence, execution, and content of [a] written agreement, a written contract sued upon must be put into evidence." Alabama Life Disability Ins. Guar. Ass'n v. Trentham, 543 So.2d 195, 196 (Ala. 1989).See also Rule 1002, Ala. R. Evid.
[6] Under certain circumstances, after a contract for permanent employment has been made based upon the terms of an employee handbook, an employer cannot unilaterally change the terms of that employment to an "at-will" relationship by subsequently amending its handbook to state that the handbook does not constitute a contract of employment. SeeBirmingham Parking Auth. v. Wiggins, 797 So.2d 446, 450 n. 2 (Ala. 2001); Ex parte Amoco Fabrics Fibers Co., 729 So.2d 336, 340 (Ala. 1998).
Here, however, it is the employee who would have us uphold the terms of a subsequent handbook as contractually binding on the parties. Specifically, the employee asks us to affirm the trial court's ruling that both parties are contractually bound by the terms of the 1993 handbook. Yet, it is that very handbook that, by its own terms, disclaims any intent that it be construed as a contract. This case is therefore governed by the holdings of Hoffman-La Roche, Inc., and the cases cited in the text accompanying this note, not by the holdings of BirminghamParking Authority and Ex parte Amoco Fabrics Fibers Co.
[7] We note that in Hanson v. New Technology, Inc., although the Supreme Court did not expressly address the particular argument made in this case by Morgan, it did apply to an at-will employee attempting to assert an intentional-interference claim against a coworker the requirement that the employee show that the coworker acted outside the scope of his employment and that he did so maliciously.