This is an appeal by Lowder Realty, Inc. (hereinafter "Lowder") from a final order of the Circuit Court of Jefferson County entered June 7, 1985, denying Lowder's motion for new trial.
On May 18, 1981, Clifford E. Odom and Cliff Odom 
Associates, Inc. (hereinafter the firm will be called "Associates"), appellees, entered into a "business merger agreement" with Lowder which, in effect, transferred Associates' real estate brokerage business to Lowder in exchange for a cash consideration. Odom was the owner of Associates and negotiated the agreement on behalf of himself and Associates. The specific terms of the agreement required Odom to obtain a one-year lease of his Forestdale office at 1446 Beauty Lane to Lowder and for Lowder to faithfully perform a lease-purchase agreement covering certain office equipment and furnishings. In addition, Odom agreed to use his best efforts to retain Associates' real estate agents for employment with Lowder and Odom agreed not to compete as owner or manager of a real estate company in the northwestern area of Jefferson County, Alabama, for a period of one year.
On September 13, 1982, Odom filed suit against Lowder in Jefferson County Circuit Court for breach of the merger agreement and conversion, alleging that Lowder had failed to pay the consideration required by the agreement. Associates was added as a party plaintiff at the trial of the case. Lowder counterclaimed against Odom, alleging intentional interference with Lowder's business relations and fraud.
Lowder's counterclaims were related to the leasing of the Odom office at 1446 Beauty Lane. The premises at 1446 Beauty Lane are owned by Delton Matthews. Odom had leased the premises from Matthews since 1974. At the time the business merger agreement was entered into, Odom had a month to month lease of the premises with Matthews. Pursuant to the business merger agreement with Lowder, Odom promised to obtain a one year lease of the premises for Lowder from Matthews which was to begin June 1, 1981. Odom secured a one-year lease from Matthews, in Odom's name, and subleased the premises to Lowder for one year. The sublease was evidenced by an agreement between Odom and Lowder. The record discloses no contact between Lowder and Matthews during this period.
Lowder alleged that prior to its negotiation of the sublease with Odom, Odom agreed with Matthews that Matthews would not lease the Beauty Lane premises to Lowder at the expiration of Lowder's sublease, but would lease the premises again to Odom. Because of this alleged agreement, Lowder averred that it was unable to renew its lease with Matthews and was forced to relocate its office at the expiration of the sublease term at considerable expense. Lowder further averred that the alleged Odom-Matthews agreement constituted an intentional interference with its business relations by Odom and that Odom fraudulently suppressed the existence of this agreement while negotiating the business merger agreement with Lowder.
The case was tried to a jury and at the close of all the evidence the trial court directed verdicts against Lowder on its counterclaims for intentional interference with business relations and for fraud. A jury verdict of $12,000.00 was returned in favor of both Odom and Associates on its claim for breach of contract and a judgment was entered accordingly. Lowder *Page 25 
filed a motion for new trial challenging the trial court's directed verdict against it on its counterclaims. That motion was overruled and Lowder appealed.
The issue on appeal is whether the trial court erred by directing verdicts against Lowder on its counterclaims for intentional interference with business relations and for fraud. We are of the opinion that the trial court did not err, and we affirm its judgment.
Our review of this case is governed by those standards reiterated in Rose v. Miller Co., 432 So.2d 1237, 1239 (Ala. 1983):
 In considering the propriety of a directed verdict, our function is to view the evidence in a light most favorable to the non-moving party. If, by any interpretation, it can support a conclusion in favor of the non-moving party, we must reverse. Herston v. Whitesell, 374 So.2d 267 (Ala. 1979). A directed verdict is proper only where there is a complete absence of proof on an issue material to the cause of action or where there are no controverted issues of material fact upon which reasonable persons could differ. Caterpillar Tractor Co. v. Ford, 406 So.2d 854 (Ala. 1981).
Pursuant to our recent decision in Gross v. Lowder Realty,494 So.2d 590 (Ala. 1986), a prima facie case of intentional interference with business or contractual relations requires proof of the following elements: (1) The existence of a contract or business relation; (2) defendant's knowledge of the contract or business relation; (3) intentional interference by the defendant with the contract or business relation; and (4) damage to the plaintiff as a result of defendant's interference. However, defendant has an opportunity to prove justification as an affirmative defense to plaintiff's claim. Id.
We are of the opinion that Lowder has failed to provide any evidence of an existing contract or business relation with Matthews in this case. Without proof of this essential element of the cause of action for intentional interference with contractual or business relations, the directed verdict against Lowder on this claim was warranted.
As previously discussed, Lowder predicated its interference claim upon the alleged agreement between Odom and Matthews that Matthews would not lease the premises to Lowder at the expiration of Lowder's sublease with Odom on May 31, 1982. Lowder relies upon the following trial testimony of Matthews to prove the existence of the Odom-Matthews agreement:
 Q. Now, at the time that you and Mr. Odom sat down and talked about the terms of this lease, did Mr. Odom tell you anything about the financial condition of his business, Cliff Odom and Associates, Incorporated?
A. Yes, sir.
Q. What did he tell you, Mr. Matthews?
 A. He wanted — The building industry had gone down and he wanted to sublease it for a year, hoping he would be able to come back after the year was up.
 Q. What did he tell you about hoping to be able to come back at the end of one year?
 A. Well, if things picked up, he was hoping he would be able to come back.
 Q. All right. Now, at this time when you and Mr. Odom were discussing this lease, did he ask you at that time if you would be willing to lease the premises to him at the end of this year?
A. Yes, sir.
Q. And what did you tell him?
A. I told him I would, yes, sir.
Under the terms of the business merger agreement, Lowder contracted for, and received a one-year sublease of the Beauty Lane premises. The testimony set out above reflects that Odom wished to renew his lease of the premises at the expiration of the term of the sublease to Lowder. Lowder, as a real estate company, was fully aware that it could have insured its ability to retain the premises beyond one *Page 26 
year by requiring in the agreement that Odom secure a longer lease term on Lowder's behalf, require Odom to obtain an option to renew the one year lease, or by negotiating with Matthews for an extended lease period. Lowder failed to do so. In fact, there is no evidence in the record to indicate that Lowder indicated its desire to retain the premises longer than one year. Lowder's sales manager, James McRae, testified that during the negotiations between Lowder and Odom he was unaware of any discussion between the parties as to how long Lowder wished to occupy the premises, although it was McRae's understanding that Lowder was looking for a permanent location. Moreover, Lowder never contacted Matthews about a lease renewal until about three months prior to the expiration of its sublease with Odom — nine months subsequent to the alleged Odom-Matthews agreement. The record shows that Lowder's contact with Matthews occurred only after a dispute arose between Lowder and Odom concerning the payments under the business merger agreement, at which time Lowder attempted to secure a renewal of the lease directly from Matthews. Under these particular circumstances, Lowder had no existing contractual or business relationship with Matthews, and the trial court correctly directed a verdict against Lowder on the intentional interference with contract counterclaim.
We are also of the opinion that the trial court was correct in directing a verdict against Lowder for fraudulent suppression of a material fact. Code 1975, § 6-5-102. Lowder argues that because of the special circumstances of Lowder and Odom's relationship, Odom was under an obligation to communicate to Lowder the existence of his alleged agreement with Matthews to renew his lease of the premises following the expiration of Lowder's sublease term.
Under Code 1975, § 6-5-102, the special circumstances that impose upon a party a duty to speak upon a party under Code 1975, § 6-5-102, arise from the relationship of the parties; the value of the particular fact; the relative knowledge of the parties; and other factors. Berkel Co. Contractors v.Providence Hospital, 454 So.2d 496 (Ala. 1984). The question of the existence of a duty to communicate under Code 1975, §6-5-102, is for the jury to decide, see Jim Walter Homes, Inc.v. Waldrop, 448 So.2d 301 (Ala. 1983), but in the case at bar, there is no evidence of special circumstances that warranted submitting that issue to the jury.
No duty arises from the relationship of the parties here. Lowder and Odom were two independent business enterprises negotiating a business transaction at arm's length. Each party was astute in business matters and was equally capable of protecting its respective interests. As previously discussed, the evidence does not support Lowder's contention that Lowder desired an extended lease when it originally negotiated with Odom. The evidence also negates any finding that the fact of the Odom-Matthews agreement was of value to Lowder. Had Lowder's ability to renew its lease been of value to Lowder, it would have provided for this at the time it negotiated the agreement with Odom. The mere fact that Odom discussed with Matthews the possibility of renewing his lease of the premises at the expiration of Lowder's sublease and that Lowder was without knowledge of Odom's intention in this regard at the time it negotiated with Odom, is not sufficient to give rise to a duty to disclose. Had Lowder secured an extended lease of the premises and then have been denied continued possession of the premises due to Odom's alleged prior agreement with Matthews, Lowder would have an actionable claim against Odom for damages. But, that is not this case. Any lack of knowledge by Lowder under these facts must be regarded as self-deception by failing to protect its unstated expectations.
The judgment of the trial court is affirmed.
AFFIRMED.
MADDOX, JONES, ALMON, SHORES and BEATTY, JJ., concur.
TORBERT, C.J., and HOUSTON, J., concur in the result. *Page 27