**SAMSON PLASTIC CONDUIT AND PIPE CORPORATION, a Delaware corporation, Plaintiff,**

v.

**BATTENFELD EXTRUSIONSTECHNIK GMBH, a German corporation; et al., Defendants.**

**BATTENFELD EXTRUSION SYSTEMS, INC., Plaintiff,**

v.

**SAMSON PLASTIC CONDUIT AND PIPE CORPORATION, Defendant.**

Civ. A. Nos. 87–D–0089–S, 87–D–0566–S.

United States District Court, M.D. Alabama, S.D.

July 25, 1989.

Charles M. Crook, Sterling Culpepper, Balch & Bingham, Montgomery, Ala., Hubert A. Crouch, III, E. Stratton Horres, Jr., Gardere & Wynne, Dallas, Tex., for Samson Plastic Conduit and Pipe Corp.

Thomas S. Lawson, Jr., James N. Walter, Jr., Capell, Howard, Knabe & Cobbs, P.A., Montgomery, Ala., Debra K. Mayfield, William A. McCormack, Jaimie P. Nathanson, Bingham, Dana & Gould, Boston, Mass., Richard V. Normington, Johnson & Swanson, Dallas, Tex., for Battenfeld Extrusion Systems, Inc., et al.

## MEMORANDUM OPINION

DUBINA, District Judge.

There are presently pending in this cause motions to dismiss and amended motions to dismiss filed by Battenfeld Extrusionstechnik GMBH ("Batex") and Battenfeld Extrusion Systems, Inc. ("BESI"), which the court has converted to motions for summary judgment.[1] On February 22, 1988, Samson Plastic Conduit and Pipe Corporation ("Samson") filed a cross-motion for summary judgment. The court permitted the parties a lengthy period of time in which to conduct discovery relative to those issues raised in the parties' pending motions. The parties have submitted numerous documents, excerpts from depositions, sworn affidavits, and other exhibits and evidence in support of and in opposition to the pending motions. Additionally, the parties have submitted detailed memorandum and reply briefs, and on February 14, 1989, the court heard lengthy oral argument from counsel for the parties.

### I. *Introduction*

Samson is a family-owned company engaged in the business of manufacturing plastic pipe in Samson, Alabama. The company is owned by Howard and Karen Anderson and their son Greg, who make up the Board of Directors, and the Andersons' other three children. It employs approximately thirty-five to forty people in its plant. In 1984, Howard Anderson developed a new type of pipe, a foam-core PVC pipe, and Samson was in the process of acquiring the necessary equipment to manufacture the new product. Samson ultimately contracted to purchase nine extruders and six lines of "downstream equipment." The nine extruders were purchased from Batex, which is a German corporation with its principal place of business in Bad Oeynhausen, West Germany, and the six lines of "downstream equipment" were purchased from BESI, a United States subsidiary corporation to Batex located in Arlington, Texas. Pursuant to these contracts, Samson paid Batex and BESI approximately Seven Hundred Thousand Dollars ($700,000.00).

---

1. Rule 12(b) of the *Fed.R.Civ.P.* provides in pertinent part as follows:

   If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

With regard to the portion of the equipment which was delivered, i.e., the nine extruders and three "downstream equipment" lines, Samson alleges that it was plagued with problems, the principal one being Batex and BESI's inability to start up the equipment or get it to operate properly. Samson contends that after Batex and BESI refused to get the equipment into operating order, Samson suspended payments to Batex and BESI and they withheld delivery of the three remaining "downstream equipment" lines. Samson contends that as a result of the failure of the equipment, it has been unable to extensively manufacture or market its newly developed foam-core PVC pipe and has suffered damages as a result.

BESI sued Samson in the United States District Court in Texas for the purchase price of the downstream equipment. Thereafter, Samson sued Batex and BESI in the United States District Court for the Middle District of Alabama for fraud, breach of contract and breach of warranty. BESI's suit against Samson was transferred from federal court in Texas and consolidated with Samson's suit against Batex and BESI in the Middle District of Alabama.

## II. *Issues*

The issues presently pending before the court were raised in Batex and BESI's amended motions to dismiss filed on September 28, 1987. They are as follows:

1. Is Samson required to litigate its claims against Batex in West German courts pursuant to a "choice of forum" clause allegedly delivered to Samson and made a part of the contract between the parties?

2. Did Samson enter into an agreement settling these cases and releasing Batex and BESI from claims asserted in this litigation?

## III. *The Standard for Granting Summary Judgment*

Rule 56(c), *Fed.R.Civ.P.*, provides that a summary judgment may be granted only:

if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Accordingly, when considering a motion for summary judgment, the Court must refrain from deciding any material factual issues. Instead, the Court's sole function on a motion for summary judgment is to determine whether there exist issues of material fact to be tried and, if not, whether the moving party is entitled to a judgment as a matter of law. *See Dominick v. Dixie Nat'l Life Ins. Co.*, 809 F.2d 1559 (11th Cir.1987); *Tippens v. Celotex Corp.*, 805 F.2d 949 (11th Cir.1986); and *Keiser v. Coliseum Properties, Inc.*, 614 F.2d 406 (5th Cir. 1980). Moreover, in performing this function, inferences drawn from the underlying facts must be viewed in the light most favorable to the party opposing summary judgment. In other words, all doubt as to the existence of a genuine issue of material fact must be resolved against the party moving for summary judgment. *See United States v. Diebold, Inc.*, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Tippens v. Celotex Corp.*, 805 F.2d 949; *Carlin Communication, Inc. v. Southern Bell Tel. & Tel. Co.*, 802 F.2d 1352 (11th Cir.1986).

As to the burden of proof on a motion for summary judgment, it is clear that the movant bears the exacting burden of showing both that there is no actual dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law. *See Combs v. King*, 764 F.2d 818 (11th Cir.1985). In clarifying the proper allocation of this burden, the United States Supreme Court has stated that:

[W]e are convinced that the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits. If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or

the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict—"whether there is [evidence] upon which a jury [could] properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed."

\*    \*    \*    \*    \*    \*

Thus, in ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden.... The question ... is whether a jury could reasonably find *either* that the plaintiff proved his case by the quality and quantity of evidence required by the governing law *or* that he did not.

\*    \*    \*    \*    \*    \*

Our holding, [however,] does not denigrate the role of the jury. It by no means authorizes trial on affidavits. Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor. Neither do we suggest that the trial court should act other than with caution in granting summary judgment or that the trial court may not deny summary judgment in a case where there is reason to believe that the better course would be to proceed to a full trial.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 254–55, 106 S.Ct. 2505, 2512, 2513, 91 L.Ed.2d 202 (1986). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## IV. *Discussion*

### A. The Choice of Forum Clause

The claims in Civil Action No. 87–D–89–S are based upon two contracts entered into by Batex and Samson, each formed by an exchange of forms between the two parties. The forms used by Batex (quotations and order confirmations) each contained a choice of forum clause designating West Germany as the forum for the resolution of any disputes between the parties. The terms on the front of these forms were repeated in four different languages, including German and English. The terms on the back of the forms, including the choice of forum clause, were in German only. Batex had available printed copies of the English translation of the terms on the back, but it is disputed whether such translations were ever received by Samson.

■ Choice of forum clauses are generally favored and considered presumptively valid. "A contractual provision specifying in advance the forum in which disputes shall be litigated [is] an almost indispensable precondition to achievement of the orderliness and predictability essential to any international business transaction." *Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 516, 94 S.Ct. 2449, 2455, 41 L.Ed.2d 270 (1974).

> The expansion of business and industry will hardly be encouraged if, notwithstanding solemn contracts, we insist on a parochial concept that all disputes must be resolved under our laws and in our courts.... [A]greeing in advance on a forum acceptable to both parties is an indispensable element in international trade, commerce, and contracting.

*The Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 9, 13–14, 92 S.Ct. 1907, 1912, 1915, 32 L.Ed.2d 513 (1972). There is "a strong presumption in favor of enforcement of freely negotiated contractual choice-of-forum provisions." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 631, 105 S.Ct. 3346, 3356, 87 L.Ed.2d 444 (1985). *See also Stewart Organization, Inc. v. Ricoh Corp.*, 779 F.2d 643, 648–49 (11th Cir.), *vacated on other grounds*, 785 F.2d 896 (11th Cir.1986).

Samson contends, nevertheless, that the choice of forum clause in the instant case is invalid for three reasons: 1) the clause was never delivered to it by Batex and accordingly never became a part of the contract between the parties; 2) the clause is unreasonable; and 3) the clause is ambiguous and unenforceable.

### 1) *Is the clause a part of the Samson–Batex contract?*

Samson contends that the choice of forum clause never became part of the contract between Samson and Batex because Samson never received an English translation of the clause and it was never discussed by the parties.

It is a widely accepted principle of contracts that one who signs or accepts a written instrument will normally be bound in accordance with its written terms. *See Southern Nat'l Bank v. Crateo, Inc.,* 458 F.2d 688, 693 (5th Cir.1972); *St. Petersburg Bank & Trust Co. v. Boutin,* 445 F.2d 1028, 1032 (5th Cir.1971); *Elston v. Shell Oil Co.,* 376 F.Supp. 968, 971 (E.D.La. 1973), *aff'd mem.,* 495 F.2d 1371 (5th Cir. 1974);[2] 3 A. Corbin, Corbin on Contracts § 607 (rev. 1960 & supp. 1971, 1989); 13 S. Williston, Williston on Contracts § 1577 (3d ed. W. Jaeger 1970 & supp. 1988).

As a general rule, ignorance by one party as to the terms of an agreement will not constitute grounds for relief unless it was induced by acts of the other party. *Crateo,* 458 F.2d at 692. Such inducement might occur if the other party misrepresented facts, acted in less than good faith, or had notice of the first party's ignorance. *Id.* There is no evidence here of such inducement by Batex. Since it was Batex's regular business practice to provide its customers with translations of the choice of forum clause, it appears that Batex neither encouraged nor had notice of Samson's ignorance of the clause. Rather, it appears that Samson simply never made an effort to obtain a translation of the terms, from Batex or anyone else.

The applicable rule under these circumstances is stated in *Gaskin v. Stumm Handel GmbH,* a case very similar to the present one:

> It has often been held that when a party to a written contract accepts it as a contract he is bound by the stipulations and conditions expressed in it whether he reads them or not. Ignorance through negligence or inexcusable trustfulness will not relieve a party from his contract obligations. He who signs or accepts a written contract, in the absence of fraud or other wrongful act on the part of another contracting party, is conclusively presumed to know its contents and to assent to them....

390 F.Supp. 361, 366 (S.D.N.Y.1975).

> A good and recurring illustration of the problem [of mistake due to contractual provisions not coming to the attention of one party] involves a person who is blind, illiterate or unfamiliar with the language in which the contract is written and who has signed a document which was not read to him. There is all but unanimous agreement that he is bound by the general rule [that a party who signs an instrument manifests assent to it and may not later complain that he did not read the instrument or that he did not understand its contents]. Therefore, except possibly in the case of an emergency, he must protect himself by procuring someone to read it for him.

*Id.* (quoting Calamari, *Duty to Read—A Changing Concept,* 43 Fordham L.Rev. 341, 346–47 (1974)) (other citations omitted).

While *Gaskin* is one of the few cases to address the issue of unilateral mistake in the context of a foreign language contract, the principle articulated therein is widely recognized. "The law is clear that a party cannot be excused from a contract that she has signed simply because she failed to read or understand its terms by her own doing." *Boyd v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 614 F.Supp. 940, 942 (S.D.Fla.1985) (citing *Boutin,* 445 F.2d at 1032).

---

**2.** The Eleventh Circuit, in *Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

This court accordingly finds that the choice of forum clause is part of the contract between Samson and Batex.

### 2) Is the clause unreasonable?

██ A choice of forum clause will be specifically enforced unless the adverse party clearly shows that enforcement would be unreasonable and unjust, or that the clause is invalid for such reasons as fraud or overreaching. *Stewart,* 779 F.2d at 649 (quoting *The Bremen,* 407 U.S. at 15, 92 S.Ct. at 1916). Samson asserts that this clause is invalid because it is unreasonable.

First, Samson asserts that the choice of forum clause was not freely negotiated. This court finds that, in fact, the entire contract was freely negotiated. There is no evidence that either Samson or Batex was at a disadvantage or in a vulnerable position during the forming of the contract; neither is there evidence of duress or undue influence. Rather, Samson and Batex were both practiced business entities in reasonably equal bargaining positions. The fact that a particular contractual provision may not have been specifically discussed does not preclude it from being enforceable as part of a freely negotiated contract. *See, e.g., Crateo,* 458 F.2d at 692–93; *Boutin,* 445 F.2d at 1032; *Karlberg European Tanspa, Inc. v. JK–Josef Kratz Vertriebsgesellschaft mbH,* 618 F.Supp. 344, 347–48 (N.D.Ill.1985); *Gaskin,* 390 F.Supp. at 366–67; *Elston,* 376 F.Supp. at 971.

Second, Samson asserts that the choice of forum clause is unreasonable because it would result in only part of the claims in the instant case being transferred to West Germany. This fact alone does not rise to the level of unreasonableness required to void an otherwise binding contract. A showing of mere inconvenience or greater expense does not satisfy the heavy burden a party bears in challenging a choice of forum clause; rather, it must be shown that the moving party will effectively be deprived of its day in court. *See The Bremen,* 407 U.S. at 19, 92 S.Ct. at 1918; *Gaskin,* 390 F.Supp. at 369. Furthermore,

as noted in this court's order of December 8, 1987, Batex and BESI waived their opposition to the consolidation of the two actions in this court (Civil Action Nos. 87–D–89–S and 87–D–566–S) only on the condition that the actions not lose their separate identities because of consolidation. This court must therefore consider the choice of forum issues in each case separately; it may not consider what effect enforcing the choice of forum clause in one action will have on the other action.

This court accordingly finds that the choice of forum clause is not unreasonable.

### 3) Is the clause ambiguous and unenforceable?

██ Batex's translation of the choice of forum clause, in its entirety, reads as follows:

9. *Place of delivery and court of jurisdiction.*

The place of delivery is our head office. The court of jurisdiction for both contracting parties, including actions relating to bills of exchange and cheques, is the court competent to deal with our head office. This shall also apply even if the purchaser has no general court of jurisdiction in this country. Nevertheless, we expressly reserve the right to bring actions in any other justified court of jurisdiction, for example that for the area of the head office of the purchaser. This shall also apply to those persons who are personally liable for the obligations of the purchaser or liable simultaneously with him.

Samson asserts that this clause is ambiguous and unenforceable because it could be interpreted as designating any forum where Batex does business and is subject to jurisdiction. Such an interpretation is unreasonable, however, because it would render the clause meaningless, violating "the rule that favors the construction of a contract that gives meaning and effect to all of the terms over the construction that nullifies and renders meaningless a part of the contract's language." *Strealdorf v. Commissioner of Internal Revenue,* 726 F.2d 1521, 1528 (11th Cir.1984) (Hill, J.,

dissenting). "[A]n interpretation which gives a reasonable, lawful, and effective meaning to all the terms [of an agreement] is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect." Restatement (Second) of Contracts § 203(a).

A more reasonable interpretation of the clause is that the proper forum is *the* court which deals with the head office of Batex. The clause refers not to courts, but rather to only one court. That the court referred to is West German is clear from the reference to "this country" in the next sentence, which provides that the West German forum is to be used even if the purchaser is not located in West Germany. This interpretation is further supported by the next paragraph, which states that German law governs the legal relationship between the contracting parties. *See, e.g., Karlberg*, 618 F.Supp. at 346–47 (clause designating forum as "the district in which JK is headquartered" is not ambiguous since JK is an international corporation with headquarters in West Germany and since the contract provides that West German law controls).

This court accordingly finds the choice of forum clause not to be ambiguous and unenforceable.

Because this court is of the opinion that the choice of forum clause is a part of the contract between Batex and Samson and is not unreasonable or ambiguous, it finds that Samson should be required to litigate its claims against Batex in the courts of West Germany.

### B. Did Samson Agree to Settle these Cases, Thereby Releasing Batex and BESI?

Batex and BESI assert that all claims or actions among Batex, BESI, and Samson were fully and finally settled by virtue of the parties having signed a written settlement agreement on May 4, 1987. It is undisputed that on that date Howard Anderson, President and majority shareholder of Samson, signed a two-page doc-

ument entitled "Memorandum of Intend for an Agreement." However, Samson contends that the Memorandum does not constitute a settlement or release of the claims raised in these suits because the parties did not so intend and because Anderson's signature was procured by fraud.

### 1) Did the parties intend the Memorandum to be a binding agreement?

Samson argues that the instant Memorandum is non-binding because a later, more formal agreement was contemplated by all parties. Samson correctly notes, however, that an agreement, even an oral one, will not automatically be considered non-binding merely because a later, more formal document was envisioned.[3]

[I]t is common for parties unlearned in the law, when entering into an important contract in the absence of an attorney at law, to have an understanding that an agreement drawn up by them shall be subsequently submitted to an attorney, for the purpose of having it rewritten in more legal and proper form if he deems it advisable to do so; but it has been held that such an understanding will not necessarily prevent present binding obligations from arising.

122 A.L.R. 1231–32 (citations omitted).

[W]here all the substantial terms of a contract have been agreed on and there is nothing left for future settlement, the fact alone that it was the understanding that the contract should be formally drawn up and put in writing does not leave the transaction incomplete and without binding force....

17 Am.Jur.2d § 28. *See also* Restatement (Second) of Contracts § 27.

A document's status as a binding instrument must be determined by fully examining the intent of the parties; that they anticipated a subsequent, more formal writing is simply one piece of evidence going to their intent.

[A] stipulation to reduce a valid contract to some other form does not affect its

---

**3.** Samson Plastic Conduit and Pipe Corporation's Response to the Memorandum in Support of Motions to Dismiss Heretofore Filed on Be-

half of Battenfeld Extrusionstechnik GmbH and Battenfeld Extrusion Systems, Inc. (filed July 12, 1988), pp. 2–5.

validity, [even though] it is in contemplation of the parties that a more formal contract shall be executed. . . . But it is an essential to the enforcement of such an informal contract that the minds of the parties should meet upon all the terms, as well as the subject matter, of the contract; and, if anything [material] is left open for future consideration, the informal paper cannot form the basis of a binding contract.

*Coley v. Lang*, 339 So.2d 70, 74 (Ala.Civ. App.1976).[4] If the parties intended for the agreement to become binding only upon the signing of a more formal document, then there is no binding contract without the latter; conversely, if they intended to be bound by the original agreement itself, and the agreement contains all material and essential terms—with only the agreement's form subject to future approval—then the original agreement will be binding. *See* 17 Am.Jur.2d, Contracts §§ 23–26, 28–29; 122 A.L.R. 1217, supplemented by 165 A.L.R. 756.

While many of the facts involved in the signing of the instant Memorandum are uncontroverted, the parties' intentions as to its effect are strongly disputed. A determination of whether the parties intended the Memorandum to constitute a binding agreement would involve answering questions of fact. It would therefore be improper for this court to decide this issue on a motion for summary judgment.

### 2) *Was Anderson's signature procured by fraud?*

Samson contends that Anderson's signature on the Memorandum was procured by fraud and that the Memorandum is therefore invalid. Samson alleges that Batex and BESI both fraudulently misrepresented facts and fraudulently failed to disclose facts to Samson.

### a) Did Batex and BESI make affirmative misrepresentations to Samson?

■ Samson first alleges that Batex and BESI represented to Anderson that the Memorandum did not constitute a final and binding agreement and that his signature would merely acknowledge receipt of the document. In contrast, Batex and BESI maintain that all parties involved considered the Memorandum to be a binding agreement, with only legalistic, boilerplate language to be added later.

Because resolving this issue would necessitate answering questions of fact, this court cannot determine on a motion for summary judgment whether Batex and BESI misrepresented to Anderson the consequences of his signing the Memorandum.

### b) Did Batex and BESI fraudulently fail to disclose material facts to Samson?

■ Samson further alleges that Batex and BESI had a duty to disclose to Samson that BESI was going to close in the future, that Ulrich Hallemeier was an attorney, and that Peter Allan was being paid by Batex to negotiate at the May 4 meeting. Their failure to do so, Samson contends, constitutes fraud. In response, Batex and BESI assert first that they owed Samson no such duty of disclosure and second that, even assuming they did, Samson neither relied on nor suffered detriment because of Batex and BESI's failure to disclose.

Section 6–5–102, *Ala. Code* (1975), provides as follows:

Suppression of a material fact which the party is under an obligation to communicate constitutes fraud. The obligation to communicate may arise from confidential relations of the parties or from the particular circumstances of the case.

Under § 6–5–102, the special circumstances that impose upon a party a duty to

---

**4.** Under this rule, some rewording of a contract is obviously allowed. What is important is that no *material* changes or additions are intended. *See, e.g.,* 17 Am.Jur. §§ 26 (all "material and essential" terms must be specified), 28 (all "substantial" terms must be agreed on).

Samson points to changes in Batex and BESI's later draft of the agreement as evidence that the Memorandum was not intended as a final agree-

ment. Whether this is true depends first on whether the changes and/or additions consisted of substantive changes or, alternatively, purely boilerplate formalities or linguistic revisions, and second on whether the parties intended to make such changes and/or additions at the time they signed the original Memorandum, or whether such intentions arose later.

speak arise from the relationship of the parties, the value of the particular fact, the relative knowledge of the parties, and other factors. *Peterbilt Motors Co. v. Martin,* 521 So.2d 946, 950 (Ala.1988); *Lowder Realty, Inc. v. Odom,* 495 So.2d 23, 26 (Ala.1986); *Berkel & Co. Contractors v. Providence Hospital,* 454 So.2d 496, 505 (Ala.1984). Mere silence is not actionable unless a confidential relationship or special circumstances exist; otherwise, active concealment or misrepresentation must be present. *Trio Broadcasters, Inc. v. Ward,* 495 So.2d 621 (Ala.1986); *Bank of Red Bay v. King,* 482 So.2d 274, 284–85 (Ala.1985); *Bettis v. Bettis,* 475 So.2d 847, 852 (Ala. 1985).

> [I]n arms length dealings, there is no duty to disclose unrequested information.... [Alabama] cases seem to hold that when both parties are intelligent and fully capable of taking care of themselves and dealing at arms length, with no confidential relations, that no duty to disclose exists when information is not requested, and that mere silence is then not a fraud....
>
> To establish fraud by silence, one must aver facts from which a duty to speak arises and from which it appears that the parties were not dealing at arms length.

*Dominick v. Dixie Nat'l Life Ins. Co.,* 809 F.2d 1559, 1959 (11th Cir.1987) (citations omitted).

Normally, the question of the existence of a duty to communicate is for a jury to decide, but where there is not a scintilla of evidence of special circumstances to warrant submitting the issue to a jury, the question is to be decided by the court as a matter of law. *See Dominick,* 809 F.2d at 1569 ("The existence of a duty to disclose is a legal question, to be discerned 'from the confidential relations of the parties or from the particular circumstances of the case.' "); *Trio Broadcasters,* 495 So.2d 621 (trial court reversed for letting question of fraud go the jury where, because the contracting parties had dealt at arms length, there was no evidence of a duty to disclose on the part of the defendant); *Lowder,* 495 So.2d at 26 (upholding trial court's directed verdict for the defendant on a fraud claim because of the lack of evidence that defendant had a duty to communicate). *See also McCausland v. Tide–Mayflower Moving & Storage,* 499 So.2d 1378, 1384 (Ala.1986); *Bettis,* 475 So.2d at 852–53.

In the instant case, Samson has presented no evidence that Batex or BESI misrepresented or actively concealed any facts material to the settlement negotiations.[5] Neither has it presented evidence that a special relationship among the parties compelled Batex or BESI to affirmatively communicate information to Samson.[6] Absent any such evidence, this court finds that there was no confidential relationship among the parties so as to compel Batex or

5. In fact, it appears that Anderson did obtain at least some information pertaining to these matters. Anderson concedes that he had suspicions as to all three matters, but evidently he failed to inquire of Batex or BESI what the true facts were.

Concerning BESI's closing down, Anderson states, "I had no reason to believe that BESI was going to close down *other than my feelings.*" Plaintiff Samson Plastic Conduit and Pipe Corporation's Memorandum in Opposition to the Amended Motions to Dismiss (Summary Judgment) and in Support of Plaintiff's Cross–Motion for Summary Judgment (filed June 13, 1988), p. 21 (emphasis added). Concerning Hallemeier's status as a lawyer, Anderson concedes that he was given Hallemeier's business card. Hallemeier's title, "General Manager, Legal Affairs and Insurance," should at least have raised the possibility in Anderson's mind that Hallemeier was an attorney. Further, Hallemeier testified that he "advised Anderson that he 'wouldn't talk to him as a lawyer,' " *id.* at 23, which

should have alerted Anderson to the fact that Hallemeier *was* a lawyer. Concerning Allan's status as a negotiator paid by Batex, Anderson concedes that he "suspected that Peter's travel expenses were being paid by Batex," *id.* at 24, but Anderson apparently failed to inquire so as to verify or negate these suspicions.

This court can find no evidence that Batex or BESI either *misrepresented* or *actively concealed* these facts from Samson, or even that they realized Anderson's semi-unawareness of these matters.

6. Rather than presenting evidence of a special relationship among the parties, Samson, citing *Dominick v. Dixie Nat'l Life Ins. Co.,* 809 F.2d at 1570, states the following proposition:

> Where the accused has superior knowledge of the suppressed fact and the defrauded party has been induced to take action which he might not otherwise have taken, the obligation to disclose is particularly compelling.

BESI to actively volunteer information to Samson.

Accordingly, this court finds that, regardless of whether Samson relied on or suffered detriment because of Batex and BESI's failure to disclose that BESI was going to close in the future, that Ulrich Hallemeier was an attorney, or that Peter Allan was being paid by Batex to negotiate at the May 4 meeting, Batex and BESI were under no duty to voluntarily communicate these facts and their failure to do so does not constitute fraud.

### V. *Conclusion*

It is the opinion of this court that Batex and BESI's motions to dismiss and amended motions to dismiss, treated by the court as motions for summary judgment, on the issue of whether the choice of forum clause is a part of the contract between Samson and Batex, are due to be granted, and that Civil Action No. 87–D–89–S is due to be severed and transferred to the appropriate court of West Germany for disposition.

It is further the opinion of this court that Samson's cross-motion for summary judgment, on the issue of whether Batex and BESI fraudulently failed to disclose material facts to Samson during the May 4 settlement negotiations, is due to be denied. Finally, it is the opinion of this court that Batex and BESI's motions for summary judgment and Samson's cross-motion for summary judgment, on all other issues pertaining to Samson's alleged agreement to settle these cases and release Batex and BESI from its claims, involve issues of fact and are accordingly due to be denied.[7]

DONE this the 25th day of July, 1989.

---

*Dominick* itself, however, holds that mere silence will not constitute fraud absent a confidential relationship among the parties involved. Only in cases where such a relationship has already been established will the above statement be true; mere superior knowledge by one party will not *create* such a relationship.

7. The issues which this court cannot determine on summary judgment are, first, whether the

---

parties intended the Memorandum to constitute a binding agreement and, second, whether Anderson's signature was procured by affirmative fraudulent misrepresentations. The issue of whether Anderson's signature was procured by fraudulent failure to disclose, however, as noted in this memorandum opinion, has been decided by this court as a matter of law.