Brady, J.
This is an age discrimination case in three counts: G.L.c. 151B (Count II); breach of contract (Count I); and G.L.c. 93, §103(a) (Count III). The defendant, who discharged Plaintiff on December 31, 1990, moves for summary judgment on all counts. Plaintiff opposes; and in addition moves (at the hearing) that I recuse myself. For reasons stated herein, I deny the plaintiffs oral motion to recuse. On the Rule 56 motion, I allow the motion on Counts I and III and deny the motion on Count II.
Motion to Recuse
The plaintiff, an employee in defendant’s contracts department, reported to defendant’s in-house attorney Mark Beaudouin. Mr. Beaudouin, along with Mr. Peters and Ms. Smith, were involved in the decision by defendant to terminate plaintiff. Mr. Beaudouin was previously employed as an associate attorney at the law firm of Nutter, McClennen and Fish (Nutter) from September 20, 1982 to April 19, 1985. Prior to my judicial appointment I was a senior partner at Nutter. For some time during Mr. Beaudouin’s work at Nutter, he was assigned to the litigation department. Although I do not recall a specific case, it is possible that Mr. Beaudouin worked on matters under my supervision from time to time. I have not seen him since he left Nutter in 1985. My relationship with him is too distant to have any bearing on my analysis of the present case. Accordingly, I deny plaintiffs oral motion to recuse.
Chapter 15 IB Claim (Count II)
The issues here are whether, as defendant asserts, it terminated plaintiff because it eliminated his position as manager of government affairs (the primary function of which was to ensure company compliance with export laws) after the federal government relaxed export regulations, and retained his assistant, Ms. Scott, because she was more useful to the company in performing what remained of the export duties as well as her duties as assistant corporate secretary; or whether, as plaintiff asserts, defendant’s asserted reason for termination is a pretext and the real reason that defendant fired plaintiff was age discrimination. As is not uncommon in cases of this nature, plaintiff presents no direct evidence of age discrimination. Issues of intent and state of mind, however, must often be proved by inference; such cases are usually not suitable for resolution by summary judgment. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991). Here, there is conflicting evidence con *556 cerning whether plaintiffs job was actually eliminated; or whether instead the defendant simply replaced plaintiff with a younger (and presumably less expensive) employee. There is a triable issue concerning whether defendant chose to keep plaintiffs assistant, Scott, and fire plaintiff because, given her additional assistant corporate secretary duties, she was more “useful” to defendant. I cannot determine from reading the papers whether Ms. Scott’s additional duties as assistant corporate secretary were significant or insignificant.
It is correct that under Massachusetts law the plaintiff must prove discriminatory animus: “[T]he plaintiff has the burden of persuading the factfinder that the employer intentionally discriminated against him or her on account of... [age] and that, but for the discrimination, the employer would not have taken the complained of action.” Brunner v. Stone & Webster, 413 Mass. 698, 699 (1992). If the jury believes that defendant’s asserted reason for termination is phony, it may infer the necessary impermissible motive. St. Mary’s Honor Center v. Hicks, 113 S.Ct. 2742, 2749 (1993); LeBlanc v. Great American Insurance Co., 6 F.3d 836 (1st Cir. 1993); Anderson v. Baxter Health Care Corp., 1994 WL 5698 (7th Cir. 1994 pp.3-4). Certainly this case may look better on paper than it does after the factfinder has heard the witnesses, and it is of course subject to further review on a motion for judgment notwithstanding the verdict if the jury finds for plaintiff; but summary judgment is not appropriate. Accordingly, it is denied.
Breach of Contract (Count I)
The plaintiff premises his claim of breach of contract on his alleged participation in a salary reduction plan called the “K” plan, under the terms of which he says he agreed to accept salary reductions of up to 50 percent in exchange for a guarantee of no layoff. He further says that he does not recall ever being notified that this plan was cancelled. Plaintiff presents some evidence that such a plan once existed in a book (or pamphlet) entitled A History of the General Radio Company by Arthur E. Thiessen published in 1965. The plaintiff testified in his deposition that the accounting manager told him, at the time that he signed up for the plan in the early 1960’s, that the plan would allow the company to avoid layoffs. From this, plaintiff testified, he “inferred” that the plan guaranteed continuous employment. Plaintiff has not presented anything, however, which would amount to a promise by the company that it would not under any circumstances lay off the plaintiff. That the company may once have had a plan to avoid lay offs does not contractually bind it to guarantee lifetime employment. In any event, defendant presents uncontra-dicted testimony that the so-called “K” plan had not been in effect since at least the 1970’s. The defendant has in fact had to lay off numerous employees in the last decade. In 1984 it had approximately 3,000 employees. Today it has approximately 1,200. The various employee policy handbooks produced by defendant all make it clear that it does not guaranty that there will not be layoffs.
Plaintiff also relies on an alleged promise of his supervisor, Mr. Beaudouin, to lay off his assistant Scott rather than himself. If Mr. Beaudouin made this statement, it was not supported by consideration and would have had no binding effect. Plaintiff cites no case law support that any such promise would have had any legal effect.
Finally, plaintiff argues that defendant had a reputation as a “no layoff’ employer, and that this was part of defendant’s “culture.” Again, plaintiff cites no authority that “reputation” and/or “culture” create a binding obligation upon an employer never to lay off anyone. “Lifetime contracts are extraordinary in their nature and strong proof is required to establish their due formation.” Gregory v. Raytheon, 27 Mass.App.Ct. 1170, 1171 (1989). No such proof is presented here. Summary judgment on this count is allowed.
G.L.c. 93, §103 (Count III)
In Count III, plaintiff invokes the Massachusetts Equal Rights Act, G.L.c. 93, §103(a). It is by now quite well established, at least among the Superior Court bench, that Chapter 15 IB is exclusive in employment related discrimination cases. Furthermore, in Patterson v. McLean Credit Union, 491 U.S. 164 (1989), the U.S. Supreme Court construed the phrase “to make and enforce contracts” (which appears in 42 U.S.C. §1981 and C. 93, §103(a)) not to extend to the performance of a contract after its formation. The Supreme Court determined that 42 U.S.C. §1981 “covers only conduct at the initial formation of the contract and conduct which impairs the right to enforce contract obligations through legal process.” Id., at 179-80. Such conduct is not involved here. I have applied the Patterson decision in a similar age discrimination case entitled Charland v. Muzi Motors, Inc., Norfolk Superior Court, Civil Action No. 93-0367 (Memorandum of Decision dated June, 1993, Brady, J.). Furthermore, since plaintiffs counsel has not bothered to brief the issue, I infer that he no longer seriously advances this claim.
ORDER
For the reasons stated above, plaintiffs oral motion to recuse is DENIED. Defendant’s motion for summary judgment is ALLOWED as to Counts I and III, and DENIED as to Count II.