McIntyre, Frances A.,
J. This case requires the court to interpret the relationship between G.L.c. 151B (1992 ed.)[2]and G.L.c. 93, §§102 and 103 (1992 *57 ed.) (equal rights act).[3] Plaintiff, Edward Rodman (“Rodman”), of Peabody, Massachusetts, alleges that defendants Mail Boxes, Etc., Inc.[4] (“Mail Boxes”) and Daniel Murphy (“Murphy”), of Danvers, Massachusetts, compensated him less favorably than a younger worker and laid him off because he was 73 years old, thus violating Mass. G.L.c. 93, §103. For this violation, Rodman seeks back pay, compensatory damages, damages for emotional distress, and punitive damages as well as reinstatement to his position with Mail Boxes under Count I. Under Count II, Rodman alleges that Murphy intentionally interfered with Rodman’s employment relationship with Mail Boxes.
Defendants Murphy and Mail Boxes have moved to dismiss Rodman’s complaint, pursuant to Mass.R.Civ.P. 12(b)(6). They contend that, through Count I, Rodman is trying improperly to re-cast his prior Mass. G.L.c. 151B discrimination claim as a claim under Mass. G.L.c. 93, §102-103, which fails as a matter of law due to lack of an employment contract. Murphy and Mail Boxes also contend that Count II must be dismissed because it requires a third-party actor, wholly absent from the case. For the reasons provided below, the defendants’ motion to dismiss is DENIED.

FACTS

Plaintiff Rodman began working thiriy hours per week for Mail Boxes in January 2001 as a Customer Service Clerk. He was responsible for the front counter and oversaw the daily workflow. After two months, Rodman received a raise. At the end of February 2004, Rodman requested a salary increase from defendant Murphy and was offered a cost-of-living raise of $.33 per hour, which he declined.
Murphy informed Rodman that he intended to hire a new manager, William Nolan (“Nolan”), to work full-time hours and to help oversee the daily operations so that Murphy could grow his business. Nolan was hired at a higher salary than Rodman and given health insurance benefits, even though Rodman alleges he was performing essentially the same job as Nolan. When Nolan was hired, Rodman had six and one-half years of experience working at a Mail Boxes, since he had worked for a Mail Boxes in Swampscott, Massachusetts from October 1997 to January 2001. Nolan had no prior experience with Mail Boxes and Rodman partially trained Nolan in his duties. Although Nolan was hired to work full-time, he did not work full-time hours.
On May 28, 2004, Murphy informed Rodman that he was going to be laid off and Nolan’s hours reduced. During the week of June 2, 2004, Murphy told Rod-man that he was going to lay off the other two young, part-time workers because of economic reasons. Subsequently, only Rodman was laid off.
On October 13, 2004, Rodman filed a federal complaint alleging that he had been discriminated against because of age in violation of the Massachusetts Commission Against Discrimination (“MCAD”), Mass. G.L.c. 151B, §4(1B). He withdrew this complaint to pursue the matter in Superior Court under the Massachusetts Equal Rights Act (“MERA”), G.L.c. 93, §103.
Under Count I of his complaint, Rodman contends that Mail Boxes pretextually restructured its operation to replace Rodman with a younger employee, Nolan, age fifty-six, who was less qualified and considerably younger than Rodman. Rodman alleges, pursuant to Mass. G.L.c. 93, §103, that Mail Boxes has discriminated against him based on his age by compensating him less favorably than Nolan and then laying him off. Under Count II, Rodman contends that he had an advantageous business relationship with Mail Boxes, which Murphy intentionally interfered with by inducing the relationship between Rodman and Mail Boxes to end. He alleges that Murphy interfered with Rodman’s employment relationship with defendant Mail Boxes using improper means and because of improper motives.
The defendants admit that Nolan received a higher salary than Rodman and benefits, but contend that Nolan, as manager, was performing a different function than Rodman. They further contend that the other two workers were seasonal employees, who were not laid off, rather, their employment ended with the commencement of the new school year. The defendants have submitted this motion to dismiss, pursuant to Mass.RCiv.P. 12(b)(1) and (6), contending that MERA prohibits discrimination only in the formation and enforcement of contracts, of which there was none between Rodman and the defendants. Further, the defendants contend that Murphy, doing business as Mail Boxes, is indistinguishable from Mail Boxes and, therefore, incapable of interfering with the business relationship between Rodman and Mail Boxes as a third parly.

DISCUSSION

I. Standard of Review

A Rule 12(b) motion tests the legal sufficiency of a claim, typically as set forth in a complaint. Under Mass.R.Civ.R 12(b)(6), a motion to dismiss will be allowed only if the plaintiff has failed to state a claim upon which relief can be granted. Mass.R.Civ.P. 12(b)(6), Schaer v. Brandeis Univ., 432 Mass. 474, 477-78 (2000) (citations omitted). For purposes of this motion, this court will “accept as true the allegations in the complaint, and draw all reasonable inferences in favor of the pariy whose claims are the subject of the motion.” Fairneny v. Savrogan Co., 422 Mass. 469, 470 (1996). “[A] complaint should not be dismissed... unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.” Nader v. Citron, 372 Mass. 96, 98 (1977), quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957). “[A] complaint is not subject to dismissal *58 if it would support relief on any theory of law,” Whitinsville Plaza, Inc. v. Kotseas, 378 Mass. 85, 89 (1979), “even though the particular relief [which the Plaintiff] has demanded and the theory on which he seems to rely may not be appropriate.” Nader, 372 Mass, at 104 (citations omitted).

II. Massachusetts Employment Discrimination Statutes

On the federal level, employees’ rights to be free from discrimination in the workplace are covered by Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act of 1967, the Rehabilitation Act of 1963, the Americans with Disabilities Act of 1990, the Civil Rights Act of 1991, and the Fifth and Fourteenth Amendments to the Constitution of the United State. The parallel Massachusetts statute is Mass. G.L.c. 151B. The text of Mass. G.L.c. 151B, §4(1B), the Massachusetts Fair Employment Practices Act, states that it is unlawful:
for an employer in the private sector, by himself or his agent, because of the age of any individual, to refuse to hire or employ or to bar or discharge from employment such individual in compensation or in terms, conditions or privileges of employment unless pursuant to any other general or special law.
In Massachusetts, the Fair Employment Practices Law, Mass. G.L.c. 151B, covers all employers with six or more employees and is the statute under which most claims are brought. In this case, however, Mail Boxes employs fewer than six employees; therefore, Rodman may not bring his claim under c. 151B. Instead, Rodman must use the Massachusetts Equal Rights Act (“MERA”), Mass. G.L.c. 93, §103.
MERA is a broad equal rights statute that applies in many contexts in addition to employment. The statute permits any person whose rights are violated to file a private lawsuit in Superior Court. The text of Mass. G.L.c. 93, §103, reads:
Section 103. Protection of equal rights for elderly and handicapped persons; violations; commencement of civil action.
Section 103. (a) Any person within the commonwealth, regardless of handicap or age as defined in chapter one hundred and fifty-one B, shall, with reasonable accommodation, have the same rights as other persons to make and enforce contracts, inherit, purchase, lease, sell, hold and convey real and personal property, sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property, including, but not limited to, the rights secured under Article CXTV of the Amendments to the Constitution.
(b)Any person whose rights under the provisions of subsection (a) have been violated may commence a civil action for injunctive and other appropriate equitable relief, including, but not limited to, the award of compensatory and exemplary damages. Said civil action shall be instituted either in the superior court for the county in which the conduct complained of occurred, or in the superior court for the county in which the person whose conduct complained of resides or has his principal place of business.
(c) A violation of subsection (a) shall be established if, based upon the totality of circumstances, it is shown that any individual is denied any of the rights protected by subsection (a).
(d) An aggrieved person who prevails in an action authorized by subsection (b), in addition to other damages, shall be entitled to an award of the costs of the litigation and reasonable attorneys fees in an amount to be determined by the court. (Added by 1990, 156 eff. 10-31-90.)
Unlike Chapter 15 IB, MERA does not require employees to file complaints with the MCAD or any other government agency before filing a court action. However, a number of superior courts have expressly rejected this argument and concluded that Chapter 15 IB is the exclusive remedy for employment discrimination complaints. See, e.g., Balakrishnan v. Western New England College, Civil No. 90-2094 at *1 (Hampton Super.Ct. July 2, 1993) (Ford, J.) (1 Mass. L. Rptr. 24) (“G.L.c. 151B provides the plaintiff with her exclusive remedy for claims of job discrimination based upon sex, race or national origin”). In fact, in 1994, the Supreme Judicial Court ruled that an employee who failed to file with MCAD cannot get a second chance by filing an Equal Rights claim, stating:
We therefore conclude that, where applicable, G.L.c. 151B provides the exclusive remedy for employment discrimination not based on preexisting tort law or constitutional protections, and that the plaintiffs failure to adhere to the requirements of G.L.c. 15 IB required the dismissal of his complaint (emphasis added).
Charland v. Muzi Motors, Inc., 417 Mass. 580, 586 (1994). Accordingly, so long as it is determined “that G.L.c. 151B is or was available to the plaintiff, the plaintiff would have no viable c. 93, s. 103, claim under the teaching of Charland.” Agin v. Federal White Cement, Inc., 417 Mass. 669, 672 (1994). The issue becomes, then, whether Rodman may file under G.L.c. 151B.

DISCUSSION

I. Count I

The defendants contend that Rodman may not bring a claim under G.L.c. 93, §103 and that, if allowed, G.L.c. 93, §103 covers claims involving employment contracts only. The defendants argue that the only two work-related rights covered by G.L.c. 93, §103 are those of entering into an employment contract and the right to enforce the terms of the employ *59 ment contract upon termination. See Patterson v. McLean Credit Union, 491 U.S. 164 (1989).
There are no Massachusetts appellate court decisions interpreting the critical phrase “make and enforce contracts.” Instead, the defendants bolster their argument with numerous citations to Massachusetts Superior Court cases that reached the same conclusion as the U.S. Supreme Court in Patterson. These cases conclude that the language should be interpreted identically to the U.S. Supreme Court’s limited construction in Patterson, reasoning that the legislature’s failure to adopt more expansive language “is a strong indication that the legislature did not intend an interpretation other than that rendered by Patterson itself on that issue.” Titcomb v. Boston Safe Deposit & Trust Co., Civil No. 92-6585 at * 3 (Suffolk Super.Ct. June 9, 1993) (Sosman, J.) (5 Mass. L. Rptr. 453); accord Fallon v. Genrad, Inc., Civil No. 92-07023 at *3 (Middlesex Super.Ct. Mar. 7, 1994) (Brady, J.) (1 Mass. L. Rptr. 555).
This court believes that the legislature did not intend to prohibit employees in workplaces with fewer than six employees to be powerless to sue for discrimination. Since Title VII applies to all private sector employers with 15 or more employees, ADEA to all employers with 20 or more employees, and Mass. G.L.c. 151B to workplaces with six or more employees, Rodman’s only recourse is to file under Mass. G.L.c. 93, §103. See Agin, 417 Mass, at 672; Charland, 417 Mass, at 586.
In Agin, the plaintiff alleged violation of both G.L.c. 151B (count II), and G.L.c. 93, Sections 102 and 103 (count III). The defendants filed separate motions to dismiss all three counts. The motion was denied with respect to count II, but allowed as to count III. Agin, 417 Mass, at 470. The judge concluded that “the plaintiff could not pursue remedies under both G.L.c. 151B (1992 ed.) and G.L.c. 93, Section 103, for alleged employment discrimination due to age. She noted, however, that a remedy would be available under Section 103 for employment discrimination due to age to a plaintiff whose unique circumstances did not meet the criteria delineated in c. 15IB.” Id. at n.4.
Further, once a plaintiff has met the requirement to pursue a claim with MCAD, the plaintiff is free to pursue additional remedies.
This court has previously held that where a plaintiff has met the administrative requirements of G.L.c. 15 IB, he may thereafter pursue other statutory remedies, including G.L.c. 93, §102, against his employer in court.
Debarboza v. Cablevision of Boston, Inc., Civil Action No. 98-4244-B at *2 (Mass.Super.Ct. January 1999) (Lauriat, J.) (Internal citations omitted) (9 Mass. L. Rptr. 539).
In the case at hand, Rodman was correct in concluding that he could not bring this action under c. 15 IB. He withdrew his MCAD claim, thereby limiting his claim to one statute, as required by Agin. Further, since his decision not to file under MCAD discharged the requirement to meet the administrative requirements of c. 151B, he could bring the claim under G.L.c. 93, §103. Rodman cites O’Connell v. Chasdi, 400 Mass. 686, 693 n.9 (1987); however, that note states only that 151B does not apply to employers with fewer than six employees. The Court does not state that the claim is to be brought under G.L.c. 93, §103. It was held, however, in Pascucci v. Rocco, Civil No. 93-04974, slip op. at 4 n.2 (Suffolk Super.Ct. Jan 25, 1996) (Cratsley, J.), that in a situation, such as this, where there are fewer than six employees, the plaintiff “must bring her claim under MERA.” That decision builds on Daigle v. Alexander, Civil No. 91-5588 (Middlesex Super.Ct. Nov. 5, 1993) (Dortch, J.) (1 Mass. L. Rptr. 315), where plaintiffs claim under MERA was not barred because plaintiff worked for an employer with fewer than six employees, so employer was outside the scope of Chapter 151B.
Murphy and Mail Boxes do not dispute that Mail Boxes has never employed six or more individuals, a jurisdictional prerequisite under G.L.c. 15 IB. Instead, Murphy and Mail Boxes contend that MERA does not apply because it speaks of contracts and there is no employment contract involved here. They are correct that G.L.c. 93, §103 states that: “Any person within the Commonwealth, regardless of... age ... shall... have the same rights as other persons to make and enforce contracts . . .” Section 103 continues, however, with a recitation of rights to “inherit, purchase, lease, sell, hold and convey real and personal property, sue, be parties, give evidence, . . .” (emphasis added). Clearly, it is possible for MERA to be interpreted in favor of Rodman’s actions under it.

II. Count II

To prove tortious interference with an advantageous relationship, the plaintiff must show: “1) a business relationship or contemplated contract of economic benefit; 2) the defendant’s knowledge of such relationship; 3) the defendant’s intentional and ’’malicious" (or improper) interference with it; and 4) the plaintiffs loss of advantage directly resulting from the defendant’s conduct." Comey v. Hill, 387 Mass. 11, 19 (1982) (quoting from J.R. Nolan, Tort Law Section 72, at 87 (1979)). Actual pecuniary damage is a necessary element of the claim. Morochnick v. Quigley, 17 Mass.App.Ct. 1035, 1035-036 (1984).
Rodman alleges that Murphy, as an individual, interfered with his employment relationship with Murphy’s company, Mail Boxes, and that this interference was improper and resulted in a economic loss to Rodman. The defendants dispute this count by stating that Murphy is the sole owner of the co-defendant entity, Mail Boxes and that this count must be dismissed because Murphy and Mail Boxes are one and the same and an employer cannot interfere with his *60 own advantageous relationship. See Appley v. Locke, 396 Mass. 540, 543 (1986). They contend that absence of a third-party relationship precludes an intentional interference claim against Murphy. See Williams v. Commonwealth Limousine Serv., 9 Mass. L. Rptr. 493 (Middlesex Super.Ct. January 26, 1999).
Note, however, that the case law also supports the idea that actions of individuals within the scope of their employment may be imputed to the company itself. Gram v. Liberty Mutual Ins. Co., 384 Mass. 659, 663 n.3 (1981). Because he was the business owner, Murphy indisputably had a right to terminate Rodman. Appley, 396 Mass, at 543.
It is also clear that, because Mail Boxes is a franchise organization, Rodman may be justified in his concern that his reputation with the main franchising organization may be impacted by the difficulty he has with his relationship with Murphy at Murphy’s franchised Mail Boxes store.

CONCLUSION

Based on this information, Rodman’s allegations in his complaint, which at this motion to dismiss stage are required to be accepted as true, are sufficient to satisfy the elements of the claims stated. Therefore, the defendants’ motion to dismiss is DENIED as to all counts specified.

General Laws c. 151B, Sections 4(1), 4(1B), & 4(5) (1992 ed.), provide: “It shall be an unlawful practice:
“1. For an employer, by himself or his agent, because of the race, color, religious creed, national origin, sex, sexual orientation ... or ancestry of any individual to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment, unless based upon a bona fide occupational qualification.
“IB. For an employer in the private sector, by himself or his agent, because of the age of an individual, to refuse to hire or employ or to bar or to discharge from employment such individual, or to discriminate against such individual in compensation or in terms, conditions or privileges of employment, unless based upon a bona fide occupational qualification.
“5. For any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden or to attempt to do so.”

General Laws c. 93, Section 103(a) (1992 ed.), provides: “Any person within the commonwealth, regardless of handicap or age as defined in chapter one hundred and fifty-one B, shall, with reasonable accommodation, have the same rights as other persons to make and enforce contracts, inherit, purchase, lease, sell, hold and convey real and personal property, sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property, including, but not limited to, the rights secured under Article CXIV of the Amendments to the Constitution.”

As pointed out in the defendants’ answer to the complaint, the proper identify of the employing entity in this matter is “Daniel P. Murphy d/b/a Mail Boxes Etc. # 1397.”